# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—MARCH TERM, 1882.

## THE CITY OF CHICAGO
v.
## THE FIDELITY SAVINGS BANK.

1. TAXES—WHEN REFUNDING MAY BE COMPELLED.—In order to create a liability on the part of a municipality to refund a tax alleged to have been paid upon an illegal assessment, it is necessary that the tax should be illegal and void; it must have been paid under compulsion or its legal equivalent, and it must have been paid over by the collecting officer and have been received to the use of the municipality.

2. COLLECTOR—NOT AN AGENT OF MUNICIPALITY.—A town collector when collecting taxes does not act under any authority derived from the city, and is in no way subject to the supervision or control of the municipal authorities, nor can he by any act of his bind the city. As to taxes collected by him for the city, he is a mere trustee and in no proper sense the agent of the city.

3. LIEN OF WARRANT WILL NOT CONSTITUTE DURESS.—The mere fact that under the statute a collector's warrant is a lien upon the property taxed from the time it comes into the hands of the collector, does not constitute duress or its equivalent.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding. Opinion filed May 31, 1882.

Mr. FRANK ADAMS and Mr. F. S. WINSTON, JR., for appellant; that to authorize a recovery of taxes three things must con-

(165)

cur, viz.: the tax must have been illegal and void; it must have been paid under compulsion or its legal equivalent; it must have been paid over by the collecting officer and been received to the use of the municipality, cited Town of Lyons v. Cook, 9 Bradwell, 545; Cooley on Taxation, 565; Elston v. Chicago, 40 Ill. 514.

Payment must be made under protest: Allentown v. Saeger, 20 Pa. St. 421; Preston v. Boston, 12 Pick. 14; Jenks v. Lima Township, 127 Ind. 326; Dillon on Mun. Cor., § 947.

Money voluntarily paid can not be recovered: Brisbain v. Dacrees, 1 Eng. L. Rep. 90; Richmond v. Judah, 5 Leigh, 305; Town Council v. Burnett, 34 Ala. 400.

Messrs. DUPEE & JUDAH for appellee; that the presumption should be indulged that when a collector of taxes has received them, he holds the money to the use of the municipality, cited Mahoney Mining Co. v. Anglo Cal. Bank, Am. Law Reg. 1882, 100.

The lien of the collector's warrant constituted duress: Hill v. Figley, 23 Ill. 418; Ripley v. Galston, 9 Johns, 201; Clinton v. Strong, 9 Johns, 370; Chase v. Dwinal, 7 Me. 124; Irving v. Wilson, 4 Durn. & E. 485; County of La Salle v. Simmons, 5 Gilm. 513; C. & A. R. R. Co. v. C. V. & W. Coal Co., 79 Ill. 121; Parker v. G. W. Ry. Co. 7 M. & G. 253; Bradford v. City, 25 Ill. 349.

Ignorance of the illegality of the tax entitles the tax payer to recover, though he made no protest: City of Louisville v. Anderson, 15 Am. Law Reg. 812; Covington v. Powell, 2 Met. 226; Galveston v. Snyder, 39 Tex. 2326; Boston Glass Co. v. Boston, 4 Met. 181; Tuttle v. Everett, 51 Miss. 27.

WILSON, P. J. This was assumpsit for money had and received, brought by the Fidelity Savings Bank against the City of Chicago in the County Court of Cook county, to recover back money paid by the bank, alleged to have been received by the city upon an illegal assessment for the taxes of 1876.

The evidence tended to show that the personal property of the bank was assessed by the town assessor, prior to the fourth

City of Chicago v. Fidelity Bank.

Monday in June, at $1,500; that this valuation was not changed by the town board, but that the county board, at a meeting held September 8, 1876, increased the assessment from $1,500 to $25,000. The State board of equalization added fifty-five per cent. to the aggregate value of personal property in Cook county, thereby increasing the valuation of the plaintiff's property from $25,000 to $38,750.

The tax warrant came into the hands of the collector for the town of South Chicago, March 5, 1877. Opposite the name of the Fidelity Savings Bank appear, in the proper columns, the valuations as assessed and as equalized, the amount of the taxes, and the entry, "Paid April 26, 1877." There was no evidence of any demand of payment; nor was the payment accompanied with any protest; nor was there any proof that the money was ever paid over by the town collector to the city.

It is claimed by the bank that the action of the county board in reviewing the assessment, and increasing the amount to $25,000, was illegal and void, its power to make changes being limited to assessments made *after* the fourth Monday in June; that the money was paid under legal compulsion; and that the town collector was, *quo ad hoc*, the agent of the city, and that payment to him was payment to the city.

In the case of Town of Lyons v. Cook, 9 Bradwell, 543, we held that there are three necessary conditions to a liability to refund money paid for taxes, namely: the tax must be illegal and void, and not merely irregular; it must have been paid under compulsion or its legal equivalent; and it must have been paid over by the collecting officer, and have been received to the use of the municipality. Applying these tests to the facts of the present case, we are of opinion that the plaintiff was not entitled to recover, for reasons which we will proceed to briefly state.

Passing for the present the question as to the legality of the assessment, we will first inquire whether the money was in legal contemplation, paid over to the city. This being an action for money had and received, the receipt by the city of a sum not less than the amount of the plaintiff's recovery,

was one of the essential facts to be proved to authorize the recovery. The case shows that it was paid to the town collector, and unless such payment is to be deemed a payment to the city, the third condition of a liability, as above prescribed, was not shown.

The revenue act, in force in 1876 and 1877, provides that the proper authorities of towns, townships and cities, collecting taxes under that act, shall certify to the county clerk the amounts which they severally require to be raised by taxation; that said clerk shall estimate and determine the rate per cent. that will produce the amounts required; that to each collector's book a warrant, under the hand and seal of the county clerk, shall be annexed, commanding the collector to collect from the several persons named in said book, the several sums named in the column of totals opposite their respective names; and " the warrant shall direct the collector to pay over the several kinds of taxes that may be collected by him to the respective officers entitled thereto, less the compensation for collection allowed him by law." Section 258 provides that the bond of every county, town, or district collector shall be held to be security for the payment by such collector to the State treasurer, county treasurer, and the several cities, towns, villages and proper authorities and persons respectively, of all taxes and special assessments which may be collected or received by him on their behalf. And section 262 provides that either of the above named beneficiaries may prosecute a suit against any collector collecting or receiving funds for their use, by suit on the bond.

These are the only provisions bearing on the point now under consideration, and we think they fall far short of creating the relation of principal and agent between the city and a town collector. A town collector of taxes is neither appointed by the city, nor, when collecting taxes, does he act under any authority derived from the city. He is a town officer, and is in no way subject to the supervision or control of the municipal authorities of the city; nor can he bind the city by any act or omission of his own. His office is entirely independent of the city government, notwithstanding his collection district may lie in part or wholly within the city

City of Chicago v. Fidelity Bank.

limits. If by reason of the fact that taxes happen to be included in his tax warrant which, when collected, he is required to pay over to the city, he thereby becomes the agent of the city, it would follow that he also becomes the agent of the State or county, of a school district, a bridge company, a railroad corporation, or of any other person or corporation which may be entitled to a portion of the tax fund when collected. In like manner the county treasurer, when acting as collector in collecting delinquent taxes, would become the agent of each of the persons or corporations entitled to parcels of the money received by him.

We apprehend the position which a collector occupies in respect to moneys collected by him for city taxes is that of a mere trustee, and in no proper sense that of an agent of the city. He holds the money to the use of the city, for a failure to pay over which the statute authorizes a suit on his official bond; but until the money is paid over, it is the collector who holds it, and not the city. In an action for money had and received, it is essential to prove that the defendant has actually received the money or money's worth. It is not enough to show that there is money in the hands of a third person which the defendant is entitled to receive, or which he can recover by suit, or for which such third person has given security to pay over to the defendant. And this, we think, was the extent of the showing made by appellee.

We are also of opinion that the plaintiff failed to show that the taxes were paid under compulsion. The only evidence as to the circumstances under which the taxes were paid, the time, manner and conditions of the payment, is the entry in the collector's book " *Paid April 20, '77,*" and the fact that the warrant came into the collector's hands March 5, 1877. No demand for payment was made, and no compulsory steps by way of enforcing collection had been taken or threatened prior to the payment.

An offer to prove a demand by a notice in a newspaper was made, which was properly ruled out by the court as not provided for by statute. The claim for a compulsory payment is thus left to stand upon the bare fact that the warrant

was in the collector's hands before and at the time the bank paid the taxes.

It is insisted by the counsel for the bank that, as under the statute a collector's warrant is a lien upon the personal property of the tax payer from the time it comes into the collector's hands, such lien alone constitutes duress, or its equivalent. It might be sufficient to say that such a position, if traced to its ultimate results in the present instance, would prove fatal to appellee's case; for if, on the one hand, a lien was created, it could only be by an assessment which the county board had power to make, and which therefore the bank ought in equity to pay, and having paid, can not recover back in this equitable action; while on the other hand, if the assessment was illegal and void, the warrant created no lien, and therefore no duress.

But assuming the assessment to have been legal, and that the warrant on coming into the hands of the collector became a lien on the personal property of the bank, we are not prepared to hold that this was the equivalent of duress.

By the warrant, the collector, as required by the statute, is commanded to proceed to collect the taxes, " and for that purpose to call at least once upon each person taxed, or at his place of business (if he resides in said town) and make demand for the payment of the taxes charged to him upon his property. And in case any person named in said book shall neglect or refuse to pay his personal property tax imposed upon him *when demanded,* you shall levy the same," etc.

Thus, by the express words of the statute, as well as of the warrant, a demand is made an essential condition to the right to coerce payment by a seizure of the tax payer's goods. Until there is a refusal or neglect to pay after demand, the collector is not authorized to levy, and the demand must be personal, if the tax payer is a resident of the town or collection district. How then can it be said that a payment is compulsory, when it is voluntarily made before it is known whether payment will ever be demanded? The claim of duress seems to us to be more theoretical than real. Duress implies compulsion. The present case is not like the case of goods unlawfully held by a sheriff or other officer, who refuses to surrender the

until money is paid for their release; or that of the owner of plate, who is compelled to pay money unjustly extorted by a pawnbroker for the return of the plate. In these, and like cases, or where an officer, with an execution in his hands, threatens to make a levy unless the debt is paid, there is compulsion in its legal sense. It arises out of the actual and urgent necessities of the situation.

But in the case of a tax payer no such necessity exists until the collector has first put himself in a position which authorizes him to seize the tax payer's goods. The mere existence of the lien was harmless, and did not, *per se*, imperil the property or rights of the bank, for the collector might never undertake to enforce the warrant.

In Railroad Company v. Commissioners, 8 Otto, 541, a case strongly in point, Chief Justice Waite says: "The real question in this case is whether there was such an immediate and urgent necessity for the payment of the taxes in controversy as to imply that it was made upon compulsion. The treasurer had a warrant in his hands which would have authorized him to seize the goods of the company to enforce the collection." This warrant was in the nature of an execution, running against the property of the parties charged with the taxes upon the lists it accompanied, and no opportunity had been afforded the parties for obtaining a judicial decision of the question of their liability. As to this class of cases, Chief Justice Shaw states the rule in Preston v. Boston, 12 Pick. 15, as follows: "When, therefore, a party not liable to taxation is called upon peremptorily to pay upon such warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily, and by showing that he is not liable, recover it back as money had and received." "This," continues Judge Waite, "we think is the true rule, but it falls far short of what is required in this case. *No attempt had been made by the treasurer to serve his warrant.* He had not even personally demanded the taxes from the company, and certainly nothing had been done from which his intent could be inferred, to use the legal process which he held to enforce the collection."

That case was a much stronger case for the plaintiff than this, for there the payment of the taxes was accompanied with a protest, and a notice that suit would be commenced to recover back the amount paid; nor does it appear that the statute under which the tax was collected required a demand for payment as a prerequisite to the right to enforce the warrant by a seizure of property under it; and yet the court held that the payment could not be regarded as compulsory in such sense as to give a right of action to recover back the money.

Nor does it strengthen the appellee's case to say that when the money is once paid to the collector the city can not again call upon the tax payer for payment. Having paid the tax to the person designated by law to receive it, such payment is a bar to a second attempt to collect the same, by whomsoever made, and releases the tax payer from further liability in respect thereof; the persons entitled to the fund must henceforth look to the collector.

There is yet another ground equally fatal to appellee's right to maintain this action. It appears from the proceedings of the county board that the assessment was increased upon notice duly given to the bank. The law is settled that money voluntarily paid with a full knowledge of the facts, can not be recovered back in an action for money had and received. It is not sufficient that such payment be made only in ignorance of the parties' legal rights.

In Elston v. Chicago, 40 Ill. 514, the court says: "Although the judgment may be void, still the payments made by the plaintiffs were voluntary; they were made with a full knowledge of the facts and circumstances of the case, in ignorance only of their legal rights. * * * No case can be found where money has been voluntarily paid, with the full knowledge of the facts and circumstances under which it was demanded, which holds that it can be recovered back upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party paying it."

We have been referred by appellee's counsel to the case of Bradford v. Chicago, 25 Ill. 411, as being at variance with some of the views herein expressed. A careful examination

of that case will show that the decision in favor of the plaintiff's right to recover was put mainly upon the ground of failure of consideration. The money was paid on a void assessment for the opening and extending of La Salle street. The Supreme Court was of opinion that, under the facts shown, the improvement had been abandoned, and that therefore the city had the plaintiff's money, which it could not in conscience retain. The question of duress was not necessarily involved. Moreover, in that case the warrant required no demand, but peremptorily commanded the collector to levy. The learned judge who wrote the opinion, impliedly concedes that there may be a doubt as to the question of duress, and so proceeds to place the case upon a failure of consideration. He also states, as a further ground of recovery, that the money was paid under a misapprehension of facts, and not merely a mistake of law.

Without going further into the case, we are of opinion, first, that the plaintiff failed to show that the money was received by the city; and secondly, that it was not shown to have been paid under compulsion. The judgment of the court below is therefore reversed, and the cause remanded.