CHARLES D. CRITTENDEN v. THE CITY OF MT. CLEMENS.

*Taxes—Payment under protest—Action against city—Presentation of claim—Bank-stock—Assessment.*

1. The presentation to the council of a city incorporated under chapter 80, How. Stat., of a verified claim for money paid under protest for taxes assessed against the claimant, as provided in How. Stat. § 2528, is a condition precedent to bringing suit for the recovery of the money so paid.

2. The provisions of the tax law of 1889 as to the time, manner, and place of assessment of personal property are mandatory; but it cannot be said that a property-owner can avoid assessment at the place of his actual residence by assuming and claiming a residence in another place for the very purpose of escaping taxation.

3. The fact that a county clerk certified bank-stock to a supervisor who had no right to assess it will not invalidate its assessment to the owner where legally assessable, although not certified to the supervisor making such assessment.

Error to Macomb. (Canfield, J.) Argued April 23, 1891. Decided June 5, 1891.

*Assumpsit* for taxes paid under protest. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*A. E. Chadwick,* for appellant, contended:

1. The citizen has a right to fix his own residence or domicile, place of business, and the place where his personal property shall be assessed; citing *McCoy v. Anderson,* 47 Mich. 502, 504; *Torrent v. Yager,* 52 Id. 507; *Monroe v. Greenhoe,* 54 Id. 9, 11; *Lumbering Co. v. Witter,* 58 Id. 625; *Hood v. Judkins,* 61 Id. 578, 583.

2. It cannot be held with reason that the governing municipal body shall have demanded of it damages for its deliberate torts, in the face of the protest filed with it against such torts before they are committed; citing *Louden v. East Saginaw,* 41

Mich. 18; *Mead v. City of Lansing*, 56 Id. 601; *Lay v. Adrian*, 75 Id. 438.

*O. C. Lungerhausen*, for defendant, contended:

1. The provision of the statute requiring the presentation of a claim to the city council before suit is founded on sound principles of common sense and public policy, and is mandatory, and compliance therewith is a condition precedent to such suit; citing *Howland v. Edmonds*, 24 N. Y. 307; *Detroit v. Paving Co.*, 38 Mich. 358; *Louden v. East Saginaw*, 41 Id. 18; *Mead v. City of Lansing*, 56 Id. 601; *Lay v. Adrian*, 75 Id. 438.

LONG, J.    This action is brought, to recover the sum of $132.01, being the amount of taxes assessed upon personal property paid by the plaintiff to the collector of the city of Mt. Clemens under compulsion of law, and under protest, which reads as follows:

"I hereby protest against the collection of or payment by me of the taxes spread upon the tax roll of the city of Mt. Clemens (Third ward) for the year 1889, for the following reasons:

"*First.*    I am not a resident and was not a resident of said ward at the time of the pretended assessment or levy of said tax, but was an inhabitant of and voter in the township of Chesterfield, another and different township in the same county, at the time of such assessment, and have been ever since, and was there assessed and there paid the State, county, and township taxes assessed upon all of my personal property owned and controlled by me for said year.

"*Second.*    I notified the supervisor of said ward, before and at the time for assessing and levying taxes for said year, of all the facts above stated, and he knew them.

"*Third.*    The county clerk, as by law required, notified the supervisor of Chesterfield of my holding of bank-stock, that the same might be, as it was, assessed in said township of Chesterfield, and did not notify said supervisor of said Third ward.

"*Fourth.*    Said assessment was fraudulent, willful, and malicious, and the valuation double the relative and average valuation of like property in said Third ward, and said supervisor never requested me to make a state-

ment in writing or otherwise of any of my personal property.

"*Fifth*. No property is specified in the assessment or tax roll, and the nature and kind is not given.

"*Sixth*. The assessment was not made by said supervisor of said Third ward until after time for assessment had passed, and then by the illegal and oppressive order of the common council, and I had no notice or opportunity to protest against the same.

"*Seventh*. No demand was made of me for the payment of said taxes within the time prescribed by law.

"*Eighth*. Said collector, acting under the illegal and oppressive order and direction of the common council of said city, February 13 last, levied on my personal property, and posted notices for the sale of the same on February 19 last. The warrant of said collector was never legally extended, nor was he entitled to the benefits of the alleged extension; nor was the common council for said city, which attempted to extend said warrant, legally convened for that purpose, nor had it authority to make such extension.

"*Ninth*. That said proceedings for the collection of said tax are otherwise and in other respects illegal and oppressive, and said tax or assessment roll is on its face void.

"*Tenth*. I believe, though the said assessment roll of said supervisor of the Third ward in no manner informs or specifies the nature and kind of property assessed, that the personal property so assessed consists wholly or principally of shares of the capital stock of the Mt. Clemens Savings Bank, a bank in said city of Mt. Clemens, duly incorporated, and that no demand was made by said collector of the cashier of said bank to pay such taxes, nor any request or opportunity given said cashier to pay such taxes, and charge the amount of such taxes to the said shares so assessed.

"*Eleventh*. I believe, and it is so represented by the said collector, that the whole or principal part of the tax so assessed against me is on the capital stock of the said Mt. Clemens Savings Bank, and for such tax the collector's only remedy was and is against the cashier of said bank.

"*Twelfth*. That the whole amount of my bank-stock subject to assessment does not exceed $4,000; and that personal property belonging to me in the township of Chesterfield by law assessable in said township, independ-

ent of my residence, was fraudulently, illegally, and will-
fully assessed in said city by the supervisor of the Third
ward, on which said personal property I was duly assessed
and paid the taxes thereon in the township of Chester-
field.

"This protest is executed in duplicate.

"Dated February 19, 1890.

"CHAS. D. CRITTENDEN."

The plaintiff testified that before this assessment was
made he saw a notice in the press that the supervisor
was going to assess him in the Third ward of the city of
Mt. Clemens; that he got a notice from the supervisor of
Chesterfield showing that he had been assessed there, and
took it to the supervisor, and was advised by him that
he would not be assessed in the city of Mt. Clemens, and
that he heard no more about the assessment until it was
on the assessment roll.

Upon his cross-examination, it appeared that his wife
purchased a home in the city of Mt. Clemens about the
year 1873; that he came there to live with her, and
claimed his residence there for 1877–78, after which he
went back to the farm with his son, who resided there;
that his wife continued to reside most of the time in the
city; that he had two children, who attended school in
the city from 1873 to 1878 as resident pupils; that the
son was married in 1878, and then returned to the farm;
that in 1874 he was elected to the office of assessor in
the village (now city) of Mt. Clemens; that his wife
owns the property still in the city of Mt. Clemens, and
continues to reside there, calling that her home. The
witness was asked the following questions:

"Q. You live with your wife now, do you not?

"A. Yes, sir.

"Q. And did in the year 1889, at the time you were
assessed in the Third ward in the city of Mt. Clemens?

"A. No, sir; I was on the farm most of the time in
1889. I was hardly ever here."

The witness, continuing, said:.

"I generally got my breakfast here, and took two meals at the farm, dinner and supper. I was sleeping here and sleeping there. My wife kept house for me on the farm in 1889, and locked up the house here. We were there about nine months. We were there from September, 1888, until the next June. We have no children, but a couple of grandchildren have been with us for 18 months, and they have attended school in Mt. Clemens as resident pupils."

The city clerk was called as a witness, and produced the records of the city on the subject of the taxes assessed to Mr. Crittenden, from which it appears that April 15, 1889,—

"Ald. Ullrich moved that the question of the legality of assessing personal property of Chas. D. Crittenden in the city of Mt. Clemens be referred to the city attorney, to be reported on at the next meeting of the council. Carried; all voting yea."

Under date of May 6, 1889, it appears:

"Ald. Crocker moved that the supervisor of the Third ward of the city of Mt. Clemens be instructed to assess such property of Chas. D. Crittenden as may be properly taxable in the city of Mt. Clemens. Carried; all voting yea."

Under date of February 3, 1890, it appears that—

"A communication from Charles D. Crittenden relative to taxes on his personal property was presented, and, on motion of Ald. Crocker, the same was read, and placed on file; all voting yea. Ald. Crocker moved that said collector be instructed to collect the tax assessed to Charles D. Crittenden on the tax roll of the Third ward of the city of Mt. Clemens, which was carried; all voting yea."

The township treasurer's receipt was also produced to the council under date of February 3, 1890.

Plaintiff also called the supervisor of the township of Chesterfield, who testified that he assessed the plaintiff

upon this bank-stock in that township; that he had the certificate from the county clerk showing that the plaintiff held 50 shares of stock in the Mt. Clemens Savings Bank. It appears from the record that this bank-stock was not certified to the supervisor of the Third ward of Mt. Clemens. Plaintiff was recalled, and asked whether he ever presented any claim to the council asking them to repay the amount of this tax, and admitted that he had not.

On the part of the defense the supervisor of the Third ward was called as a witness, and testified that he had a conversation with plaintiff about his assessment. He said that he was being assessed in the township of Chesterfield, and that the supervisor of the Third ward of Mt. Clemens had nothing to do with him. The witness says:

"I told him, in case the council instructed me to assess him, I should certainly do so, and try to find what property I could. Later on I met him again, after the council had instructed me to assess him, and I told him then I would have to assess him, and he made no reply to it. Thereafter I saw him about town nearly every day."

Other evidence was given by the defendant tending to show that the plaintiff was an actual resident of the city of Mt. Clemens, and properly assessed with a personal tax in that city. Issues were thus raised which should have been submitted to the jury, unless the court was right in holding that no recovery could be had by reason of the fact that no claim was presented to the common council, as provided by the charter of the city.

If the plaintiff was an actual resident of the city of Mt. Clemens, and domiciled there in the spring of 1889, at the time the assessment was taken, he was properly put upon the assessment roll, and was bound to pay the tax. If the plaintiff was an actual resident of the city

of Mt. Clemens for several months, and domiciled there, and went out of the city in the fall of 1888, and remained in Chesterfield upon the farm merely for the purpose of escaping taxation in the city, and not with the intent to reside or claim a home in Chesterfield, and intending to return as soon as the time for taking the assessment was passed, he was properly assessed upon his personal property in the city of Mt. Clemens, and the fact that he was assessed and paid the tax in the township would not estop the city from its defense in this case.

On the other hand, if it is a fact, as claimed by the plaintiff, that his wife rented her house, and they went upon the farm in Chesterfield in the fall of 1888 with the intent to reside there, and were actually domiciled there at the time the assessment was made, and did not go for the purpose simply of escaping taxation in the city, the plaintiff was not properly assessed in the city of Mt. Clemens.

These were questions of fact for the jury.

Section 1170a9, 3 How. Stat., is mandatory as to the place of assessment of personal property; that is, the township of which the owner is an inhabitant on the second Monday in April of each year.

Section 1170b, in the third subdivision, declares that the shares of bank-stock owned by a person residing in the county where the bank is located shall be assessed in the township where he resides.

Section 1170b1 requires the cashier of every bank to file, on the second Monday of April in each year, in the office of the county clerk, a statement of all real estate held by the bank, and its value, a list of the names of its stockholders, with stock held by each, and their residence. The county clerk shall notify the supervisor of each township of the name of each stockholder residing

in his township, and the amount of such stock held by him. All property is to be assessed as of the second Monday of April.

It is claimed by the plaintiff that all these sections are mandatory, and that the fact that the county clerk certified the stock to the supervisor of Chesterfield is conclusive for the purpose of the assessment. These sections are mandatory as to the time, manner, and place of assessment, but it cannot be said that the party can avoid the assessment where his actual residence is, by assuming and claiming a residence in another place for the very purpose of escaping taxation; and the fact that the county clerk certified the stock to a supervisor who had no right to assess it would not invalidate the tax, when properly assessable, though not certified to that supervisor by the county clerk.

These questions, however, were not submitted to the jury. They were wholly ignored by the trial court, and we think very properly, under the provisions of the city charter.

The court, after the conclusion of the evidence, instructed the jury as follows:

"It is provided, in substance, by the charter of the city of Mt. Clemens, that all claims against the city shall be audited and allowed by the common council, and that a statement of the claim shall be made by the claimant, and filed with the common council, and verified by the oath of the claimant before the claim is allowed, and that it shall be a conclusive answer to any suit, brought by the party to enforce such a claim, that it had not been presented to the council. In my judgment, gentlemen of the jury, that provision of the charter is applicable to this case. It is conceded by the plaintiff that, before commencing this suit, he did not present any claim to the common council for a return or payment back to him of this tax as provided by the charter; and consequently for this reason it becomes my duty, as I view the law, to instruct you that the plaintiff cannot recover

in this action, and that your verdict should be for the defendant."

It is claimed that the court was in error in this ruling, as the matter was laid before the council at its meeting on February 3, 1890, and it then directed the collector to collect the tax assessed against Charles D. Crittenden on the tax roll of the Third ward, and all the aldermen voted aye upon the resolution; but this was before the tax was paid. And it is further claimed that the demand upon the council thereafter for repayment, or the presentation of a claim to be passed upon by it, would have been a futile effort on the part of the plaintiff.

The purpose of this provision of the charter is to enable the council to have a fair and reasonable opportunity to examine claims against the city before it shall be mulcted in damages and costs by litigation. This provision of the charter is reasonable. It is conceded that, after the tax was paid, no such claim was filed. We cannot say, upon this record, that, had the plaintiff complied with this requirement of the charter, the common council would not have rescinded their action, and directed the repayment of the money. The presentation of a sworn claim would have enabled the council to go fully into the facts, and an opportunity undoubtedly would have been given the plaintiff to appear before the council, and present his whole claim, and the reasons which plaintiff claims to believe should exempt him from taxation in the city. No such effort was made by him, and the court was not in error in holding that this was a condition precedent to his bringing suit.

The judgment must be affirmed, with costs.

The other Justices concurred.