MARGARET WHITNEY v. THE CITY OF PORT HURON.

*Municipal corporations—Presentation of claim to council—Payment of taxes under protest.*

1. Where, after the presentation to a city council of a claim for taxes paid under protest, four meetings of the council are held without any action being taken regarding the claim, a suit brought at the expiration of thirty-six days from such presentation, and two days after the last council meeting, is not premature, under a charter provision barring such action if commenced before the council have had a reasonable time to investigate and pass upon the claim.

2. If a citizen's property is threatened with seizure under a tax warrant, or his real estate is advertised for sale to satisfy delinquent taxes, he is, equally in both cases, entitled to free his property by the payment of the tax under protest, which payment will not be considered voluntary.

3. The decision in *City of Detroit v. Martin*, 34 Mich. 170, that the payment under protest of a tax levied under an unconstitutional law, where the officer had no authority to compel

such payment otherwise than by a sale of land, is a voluntary payment, does not apply to a case where the law under which the levy is made is constitutional, and the illegality of the tax. is claimed because of irregularities or defects in the statutory proceedings.

4. Where a tax-payer claims that the whole proceedings for the grading and paving of a street are void for want of jurisdiction, and on paying the taxes assessed against him on account of such improvement there is indorsed on the tax receipt a statement that the payment is made under protest, to protect. the property from being sold, and on account of taxes being. illegal, the protest is sufficiently specific.

Error to St. Clair. (Canfield, J.) Argued May 20,. 1891. Decided November 13, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Frank T. Wolcott* (*O'Brien J. Atkinson,* of counsel),. for appellant.

*Frank Whipple,* for plaintiff.

MORSE, J. The plaintiff sues to recover taxes paid by her under protest on a special assessment levied for the paving of Pine Grove avenue, in the city of Port Huron. She had judgment in the court below, the verdict of the jury being directed by the circuit judge in her favor.

The first objection to this judgment is that the plaintiff had no right to sue at the time she did. The charter of Port Huron in force at the time this suit was commenced provides that it shall be a sufficient bar and answer to any action or proceeding in any court for the collection of any demand against said city that it was never presented to the council, or, if presented, that the suit was brought before the council had reasonable time to investigate and pass upon it. Local Laws of 1885, p. 496. The plaintiff presented her claim to the common council, and it was read at a meeting of that body held.

December 6, 1886. Meetings of the council were after-
wards held December 13, December 20, January 3, and
January 10, at which meetings no action was taken in
regard to plaintiff's claim. The plaintiff brought suit
January 12, 1887, and waited long enough before she
did it.[1]

It is also claimed that her payment of the tax was
voluntary. The tax was paid April 2, 1886, and across
the face of the receipt was written as follows:

"Paid under protest, to protect property from being
sold, and on account of taxes being illegal."

The city treasurer had advertised the plaintiff's prop-
erty for sale, and she had the right to presume that he
would proceed with the sale. The fact that the sale
would have conveyed no title to the purchaser on account
of the illegality of the tax, or that she could have
removed the cloud upon her title caused by such sale by
legal proceedings, had no bearing upon her right to pay
the tax under protest, and thereby stop the sale. Nor
was it any the less an involuntary payment under the
law. If because a tax is illegal, and a sale of property
under it would be void, a payment to prevent the seizure
or sale of one's property cannot be considered as an
involuntary payment, then our statute providing for the
payment of taxes under protest would be of no force or
use. If the citizen's property is threatened with seizure
under a tax warrant, or his real estate is advertised for
sale to collect delinquent taxes, he is, equally in both
cases, entitled to free his property by a payment of the
tax under protest, and such payment will not be con-
sidered voluntary.

It was held in *City of Detroit v. Martin*, 34 Mich. 170,

---

[1] It was held in *Crittenden v. City of Mt. Clemens*, 86 Mich. 220,
that the presentation of a verified claim for taxes paid under pro-
test was a condition precedent to bringing suit for their recovery.

that one who has full knowledge of all the facts, being conclusively presumed to know the law, is presumed to know that an assessment, laid under a statute which is *unconstitutional and void,* cannot be made the basis of a sale that could constitute any cloud upon his title, and therefore to know that he could not be injured by it; and that a payment of a tax under protest in such a case, where no seizure of goods or of the person had been made or threatened, and where the officer had no authority to compel payment otherwise than by a sale of land, which could injure no one, would not be other than a voluntary payment, as a protest would not change the character of the payment. It was held also that a sale of the land under such circumstances would not create a cloud upon the owner's title. This may be good law when applied to proceedings under an unconstitutional enactment, which is no law, and is held to confer no rights upon any one, as all must be presumed to know that it is unconstitutional and void; but it cannot be applied to cases where the statute under which the proceedings to levy the tax are taken is constitutional, and where the illegality of the tax is claimed from irregularities or defects in the statutory proceedings. If it were so, it would require of the land-owner a greater knowledge of the law than attorneys, or even courts, possess. For instance, in the present case able attorneys for the defendant are claiming that the tax paid by plaintiff was a legal one, and that all the proceedings in assessing it were lawful; yet at the same time they argue that, if it should be determined by this Court to be illegal for any reason, then the plaintiff's payment must be considered a voluntary one, and she cannot recover what she has paid, because she and every one else are presumed to know that the tax is void, and that a sale under it could convey no title, and therefore cast no cloud over her title.

But the fact remains, as every one knows, that a tax deed or any other purported conveyance of land does cloud the title, and that it can never be sold or exchanged as readily, and seldom for as great a price, as when- unincumbered, although it may be patent to the courts that such deed or conveyance is void and of no consequence, so far as the holding of the title is concerned; and, in my opinion, the owner of the land has the right, in law and equity, to treat every such tax deed or other conveyance as a cloud upon his title, and to take such steps to get rid of it, or to prevent its issue or record, as the law authorizes when the title. is actually clouded as defined by some of the authorities.

A cloud upon a title is but an apparent defect in it. If the title, sole and absolute in fee, is really in the person moving against the cloud, the density of the cloud can make no difference in the right to have it removed. Anything of this kind that has a tendency, even in a slight degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership, is, in my judgment, a cloud upon his title which the law should recognize and remove.

The third objection is that the protest of plaintiff was not sufficiently specific. Across the face of the receipt for the taxes paid by the plaintiff was the following:

"Paid under protest, to protect property from being sold, and on account of taxes being illegal."

In support of this objection we are cited to *Louden v. East Saginaw*, 41 Mich. 26; *Peninsula Iron & Lumber Co. v. Crystal Falls Tp.*, 60 Id. 514; *Peninsula Iron Co. v. Crystal Falls Tp.*, Id. 79. The last two cases do not. apply, as the protest was made under a special statute. In *Louden v. East Saginaw* the objection to the tax did not go to the jurisdiction of the city to enter upon the work, but to irregularities in the assessment of the tax,

and it was held that the plaintiff should have pointed out more specifically his reason for his objections to the tax, and why he asked that the assessment against him should be refunded. It was said:

" The case stands, therefore, on a very different footing from one relating to an entirely illegal assessment. The only illegality here was in a notice which may or may not have been seen by the parties." *Louden v. East Saginaw*, 41 Mich. at page 22.

In the present case the claim is that the whole proceedings were void, and without jurisdiction. A case involving the legality of the proceedings to pave Pine Grove avenue had been decided in this Court before the council were asked to refund this money, and that body then well knew that the whole proceeding had been declared void for want of jurisdiction, for the reason that the resolution providing for the grading and paving of the street had not been approved by the mayor as provided by the charter of Port Huron. *Twiss v. City of Port Huron*, 63 Mich. 528, 532.

An attempt is made in this case to break the force of the ruling in the Twiss case by attempting to show that the resolution was shown to the mayor, and was "approved by him, so far as passing judgment upon it and assenting to it could go." The mayor testifies that when he went into office it had not been the custom of the mayor to sign the resolutions; it was thought the signing of the journal was sufficient. He could not tell whether this particular resolution was presented to him by the clerk, or whether he signed it; but he testified that the resolution, when on its adoption before the council, was read in his hearing, that he put the motion for adoption, and declared it carried, and that he passed his judgment upon it, and approved it. But this judgment and approval

rests upon oral testimony, and is not evidenced by writing, as the charter at that time provided it should be. He did not write his approval upon the resolution, and sign the same. The approval of the journal did not comply with the charter. It was his duty to approve the journal if the proceedings of the council were therein correctly transcribed, whether he approved of this resolution or not. The case, in this respect, must be governed by the majority opinion in the Twiss case. It is not necessary to discuss the case further.

The judgment is affirmed, with costs.

The other Justices concurred.