THE CANFIELD SALT & LUMBER COMPANY V. THE
TOWNSHIP OF MANISTEE.

*Taxes—Payment under protest—Recovery.*

1. Under section 42 of the tax law of 1891, which provides that
any person may pay any tax, whether levied on personal or
real property, under protest, to the township treasurer, specify-
ing at the time, in writing signed by him, the grounds of such
protest, and may within 30 days, and not afterwards, sue the
township for the amount paid, and recover if the tax is shown
to be illegal for the reasons specified in such protest, a right
of recovery exists only where the tax itself is shown to be
illegal.[1]

2. A township treasurer made a formal levy upon a quantity of
saw-logs owned by a lumber company, and stored in its booms
in a lake, to satisfy taxes assessed against its president upon
his individual personal property. The treasurer advertised the
logs for sale, and before there had been any removal or
threatened removal of the logs, and two days before the day
fixed for the sale, the company paid the taxes under protest.
It did not attack the legality of the taxes themselves, but
insisted that the logs seized were cut from its lands, and did
not, either at the time of assessment or seizure, belong to the
person against whom the taxes were assessed. The company
sued the township to recover the taxes so paid, and in revers-
ing a judgment in its favor, and entering a final judgment in
favor of the defendant, it is held:

    *a*—That the case is not within the statute authorizing the
payment of taxes under protest, and that plaintiff's right of
recovery must be determined by common-law rules, under
which, in no case, could the defendant be held for more than
the amount of the taxes actually received.

    *b*—That the treasurer's warrant did not command or authorize
him to satisfy the taxes from the plaintiff's property, and that
in making the levy he acted without color of authority; that
plaintiff had not only an ample remedy against the officer, but

[1] See note at end of case, summarizing the legislation and collating
the cases bearing upon the subject of the recovery of taxes paid
under the pressure of an actual or threatened levy, or under stat-
utory protest.

could maintain replevin against the purchaser at the sale, if one should be made; and that under such circumstances the payment to the treasurer was voluntary.

Error to Manistee.    (Judkins, J.)    Submitted on briefs November 24, 1893.    Decided May 22, 1894.

*Assumpsit.*    Defendant brings error.    Reversed, and no new trial ordered.    The facts are stated in the opinion.

*Thomas Smurthwaite,* for appellant.

*Dovel & Smith,* for plaintiff.

McGRATH, C. J.    The property of plaintiff was seized to satisfy a tax assessed against John Canfield.[1]    Plaintiff then paid under protest, and brings *assumpsit* against the township to recover back the money so paid.

The statute (Act No. 200, Laws of 1891, § 42) provides that—

"Any person * * * may pay any tax, whether levied on personal or real property, under protest, to the township treasurer, specifying at the time, in writing signed by him, the grounds of such protest. * * * The person paying under such protest may * * * sue the township for the amount paid, and recover if the tax is shown to be illegal for the reasons specified in such protest."

This statute does not avail plaintiff.    It does not attack the tax as it appeared upon the roll, even if it, a stranger to the tax, could do so.    It insists that the logs seized were cut from its lands, and did not, either at the time of assessment or seizure, belong to the person against whom the tax was assessed.    Its complaint is of an illegal seizure of its property, upon which no lien for the tax existed, and upon a roll imposing a valid tax against another.    The statutory right of recovery exists only where

---

[1] The assessment was made in 1892, under the tax law of 1891.

the tax itself is shown to be illegal. The illegality of which plaintiff complains is in the proceeding to collect the tax, and not in the tax itself.

At the common law, defendant could only be held for the amount of the tax actually received by it. The statute makes it the duty of the treasurer to pay over the amount of the State and county taxes to the county treasurer within one week after the time specified in the warrant. In the absence of statutory provision extending its liability, the township could not be held for the money so paid over. Cooley, Tax'n (2d ed.), 806. The present case is not within the statute, and plaintiff's right to recover against the township for any part of the money paid must be determined by common-law rules.

The property seized consisted of logs in plaintiff's storage booms. The township treasurer had constructive possession only, and there was no prospect of the removal of the property, or danger of its injury or destruction. Plaintiff insists that the logs were cut from its lands, and that it was the sole and absolute owner thereof. The tax was a personal tax. It was assessed against John Canfield.[1] The warrant did not command or authorize the township treasurer to satisfy the tax from plaintiff's property. No duty was enjoined upon him to seize that property, and no obligation rested upon plaintiff to pay that tax. The seizure was not by virtue of the warrant, and the treasurer acted without color of authority. Plaintiff was fully advised of all the facts. It had another and ample remedy, and there were no special circumstances which rendered such remedy inadequate or unavailable. Under such circumstances, the payment to the treasurer cannot be said to have been involuntary.

As is said by Mr. Cooley, many payments are held to be

---

[1] Canfield was president of the plaintiff corporation.

voluntary which are made unwillingly, and only as a choice
of evils or of risks.    Cooley, Tax'n (2d ed.), 811.    The
question of what shall constitute such duress or compul-
sion or coercion as shall make a payment involuntary, so
as to enable the party paying to recover back the money
so paid, has been much discussed.    In most cases, how-
ever, the collector has been armed with a warrant directed
against the party making a payment, under statutes which
prohibited replevin.

In *Knibbs v. Hall*, 1 Esp. 84, it was held that a threat
of distress for rent is not duress, because the party may
replevy the goods distrained, and try the question of liabil-
ity at law.

In *Manufacturing Co. v. Inhabitants of Amesbury*, 17
Mass. 461, and in *Preston v. City of Boston*, 12 Pick. 14,
it was held that when a party not liable to taxation is
called upon peremptorily to pay upon such a warrant, and
he can save himself and his property *in no other way* than
by paying the illegal demand, he may give notice, and, by
showing that he is not liable, recover it back as money
had and received.

In *Glass Co. v. City of Boston*, 4 Metc. 181, 187, it is
said that—

"If a party, with full knowledge of all the facts of the
case, voluntarily pays money in satisfaction or discharge of
a demand unjustly made on him, he cannot afterwards
allege such payment to have been made by compulsion,
and recover back the money, even though he should *pro-
test at the time of such payment* that he was not legally
bound to pay the same.    The reason of the rule, and its
propriety, are quite obvious when applied to a case of pay-
ment upon a mere demand of money, *unaccompanied with
any power or authority to enforce such demand* except by
a suit at law."

In that case the payment was regarded as compulsory,
because of the power vested in the collector to levy

·directly on the property of the party making the payment. *Commissioners of Wabaunsee Co. v. Walker*, 8 Kan. 431, and *City of Muscatine v. Packet Co.*, 45 Iowa, 185, are to the same effect. In the latter case the court say:

" In fact, our attention has not been called to any case where it has been held such a payment is compulsory, unless the officer or person to whom it was made *was vested with the power to seize property*, and thus enforce payment."

In *Mays v. City of Cincinnati*, 1 Ohio St. 268, it was held that—

" To make the payment of an illegal demand involuntary, it must be made to appear that it was made to release the person or property of the party from detention, or to prevent a seizure of either by the other party, *having apparent authority to do so*."

In *City of Chicago v. Bank*, 11 Ill. App. 165, it was held that the fact that under the statute a collector's warrant is a lien upon the property taxed from the time it comes into the hands of the collector, does not constitute duress or its equivalent.

In *Merrill v. Austin*, 53 Cal. 379, it was held that the payment was a voluntary payment, because the collector was not then in a position to enforce collection by a sale of plaintiff's property.

In the case of *De La Cuesta v. Insurance Co.*, 136 Penn. St. 62, 80, this question is discussed at length, and the following rule laid down:

" If the demand is illegal, and the party can save himself and his property in no other way, he may pay under protest, and recover it back; but if other means are open to him by which he may prevent the sale of his property, if a day in court is accorded to him, he must resort to such means. Thus the seizure of a man's goods under a landlord's warrant for rent that is not due, or for more than is due, would seem to be duress as much as the seizure of property for taxes; yet, if the unlawful demand for rent

be paid under protest, it cannot be recovered back, for the reason above stated, that the tenant can replevy the goods, and try the issue of no rent in arrear before a jury."

In *De Graff v. Ramsey Co.*, 46 Minn. 319, 320, it is laid down as a general rule that—

"Where an unfounded or illegal demand is made upon a person, and the law furnishes him adequate protection against it, or gives him an adequate remedy in the premises, if he pay what is demanded, instead of taking the protection the law gives him or the remedy it furnishes, he is to be deemed to have made the payment voluntarily, and he must abide by it. There is a class of cases where, although there be a legal remedy, his situation, or the situation of his property, is such that the legal remedy would not be adequate to protect him from irreparable prejudice,—where the circumstances and the necessity to protect himself or his property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand. In such cases his act will be deemed to have been done under duress, and not of his free will."

In *Parker v. Railway Co.*, 7 Man. & G. 253, the payment was held to be involuntary because made in order to induce the company to do that which it was bound to do without such payment, and for the refusal to do which an action on the case would lie.

In *Harvey v. Bank*, 119 Penn. St. 212, it is stated that—

"There must be compulsion, actual, present, and potential, in inducing the payment by force of process available for instant seizure of person or property."

In *Atwell v. Zeluff*, 26 Mich. 118, it was held that a payment made on the demand of an officer under legal process is not voluntary, although made before a levy, "because the party paying has no legal means of preventing the seizure of his property." Payment, under like circumstances, by a stranger to the tax, has been held to be voluntary, although he has an equal right to assume that the officer will execute the process (*Louden v. East Saginaw*, 41 Mich.

18); and this must be upon the theory, not that he has a remedy to *prevent* the seizure, but in case of seizure an ample remedy against further proceedings. *Babcock v. Township of Beaver Creek*, 64 Mich. 601, was brought within the rule of the Atwell case, because, under the statute as it then stood, Babcock was liable to pay the tax, and the tax was not invalid by reason of its being assessed to Babcock, instead of in the firm name. The form of the assessment would have been material but for the provision of the statute referred to. *City of Detroit v. Martin*, 34 Mich. 170, which has been followed in a number of cases, was excepted from the operation of the rule, although the tax was assessed against the property of the party making the payment, because the statute under which the assessment was made was void, and the threatened sale would constitute no cloud upon his title.

In *Lyon v. Tax Receiver*, 52 Mich. 271, a payment made by a stranger to the tax was held to be involuntary; but in that case the collector was in actual possession, and threatened to take away the goods unless payment was made. In the present case the treasurer had, it is true, made a formal levy, and had advertised the property for sale, and in that sense only was he in possession. There had been no attempted or threatened removal of the property. The sale was fixed by the notice, dated February 4, for February 11. The payment was made on the 9th. Plaintiff had then two days in which to bring replevin,— ample time within which to protect itself against an officer acting without color of process. It cannot be said that any immediate or urgent necessity existed for the payment, or that the course taken was necessary to preserve the property of the plaintiff. *Fullam v. Down*, 6 Esp. 26, note. Plaintiff had not only an ample remedy against the officer, but could maintain replevin against the purchaser at such sale, if any should be made.

The judgment is reversed, and, inasmuch as this determination is conclusive, no new trial will be awarded.

LONG, GRANT, and HOOKER, JJ., concurred with McGRATH, C. J.

MONTGOMERY, J. (*dissenting*). I am not able to distinguish this case from *Lyon v. Tax Receiver*, 52 Mich. 271, and for this reason dissent from the views expressed by the Chief Justice.

---

RECOVERY OF TAXES PAID UNDER THE PRESSURE OF AN ACTUAL OR THREATENED LEVY, OR UNDER STATUTORY PROTEST.

The growing importance of the questions suggested in the above heading has seemed to warrant the preparation and publication, in connection with the foregoing opinion, of a note summarizing the legislation and collating the cases bearing upon the subject.

### Summary of Legislation.

1. Act No. 6, Laws of 1873 (How. Stat. § 1206), taking effect July 31, 1873, provided "that in all cases where any person, company, association, or corporation shall voluntarily and without protest pay to the officer demanding the same, and having a tax warrant or other process for the collection thereof, any sum or sums of money purporting by such warrant or process to be payable by such person, company, association, or corporation for taxes or assessments assessed, levied, or imposed by virtue of any law of this State, neither the officer so collecting the same, nor the officer who issued such warrant or process, nor the officer who made the assessment or levy, shall, in consequence of such payment, be liable in any form of action for or on account of any defect or invalidity in the law under which the proceedings are had, or of any defect or irregularities in the said proceedings or in such warrant or process."

2. The tax laws of 1882 and 1885 provided that any person might pay the taxes, or any one of the several taxes, *on any parcel of land*, under protest, to the township treasurer, specifying at the time, in writing signed by him, the grounds of such protest; that such treasurer should minute the fact of such protest on the tax roll and in the receipt given; and that the person paying under such protest might, within 30 days, and not afterwards, sue the township for the amount paid, and recover if the tax was shown to be illegal for the reasons specified in such protest. The same provision, extended in its operation so as to include *personal-property taxes*, was retained in the tax laws of 1889 and 1891, and is found in the tax law of 1893.

For cases decided prior to the passage of the tax law of 1882, which took effect March 14, 1882, see:

1. *National Bank v. Watkins*, 21 Mich. 483, where the defendant, as sheriff, having in his possession a warrant issued by the Auditor General for the collection of the specific tax assessed against the plaintiff under Act No. 122, Laws of 1867, which was *afterwards* held unconstitutional, notified plaintiff's cashier that he should

proceed to execute said warrant unless the tax was paid, and the cashier, in order to prevent a seizure of plaintiff's property, paid the tax under protest, and the sheriff paid it to the State Treasurer, as directed in the warrant, which showed on its face the source and extent of the authority asserted, by referring expressly to said act, and in a suit brought by the plaintiff against the sheriff to recover back the money so paid, it was held:

*a*—That the warrant, being bad upon its face, made the defendant, who sought to enforce it, a wrong-doer, and, any money obtained under it being unlawfully obtained, he had no right to pay it into the treasury, and such payment would not exonerate him.

*b*—That, as the payment was made under the threat of the immediate and effectual enforcement of the illegal warrant, it could not be regarded as voluntary in any proper sense; that where such a demand is made under color of office, and the payment is made under protest, the money may be recovered back, under all circumstances, from the person extorting it.

*c*—That there is nothing in the authorities to warrant the argument that there must be any technical duress, or that the party imposed upon must resort either to violent or legal remedies to prevent the execution of the process, or to recover property he allows to be seized under it; that no payment can be regarded as voluntary, and no one can be regarded as unduly negligent in making it, when he sees fit to comply with the illegal demand while protesting against its legality; that he has a right to assume that the officer will do what he threatens to do, and no principle of public policy will compel him to use means of protection, when he prefers peaceful submission, and a resort to a civil action.

2. *Nickodemus v. City of East Saginaw*, 25 Mich. 456, where the defendant's marshal demanded of plaintiff the payment of a street-improvement tax assessed against his land, and threatened, in case of non-payment, to seize and sell his property to satisfy the tax, and the plaintiff paid the same to avoid the threatened levy, and then sued the city to recover back the tax so paid, which was admitted to be illegal. And it was held:

*a*—That it was a fair presumption of law, in the absence of any proof to the contrary, that the marshal had paid to the city treasurer, as he was required by law to do, all moneys collected by him on the assessment.

*b*—That the payment could not be regarded as voluntary; that it was made under the threat of the immediate seizure and sale of plaintiff's-property, which he could not, under the statute, replevy, if seized; that he might have filed a bill to restrain the collection of the tax, but was not compelled to do so; that he had the right to assume that the officer would carry out his threat, and to prefer peaceable submission, and resort to a civil action.

3. *Atwell v. Zeluff*, 26 Mich. 118, where a land-owner sued a township supervisor in an action of trespass, the cause of action being the issuance by the defendant of tax rolls and warrants for the collection of ditch taxes assessed against plaintiff's land, the description of which was void for uncertainty, and the taxes therefore void, the plaintiff having paid one of the assessments on demand of the collector, without levy and without protest, and the other having been enforced by the sale of plaintiff's property. And it was held:

*a*—That, where an officer demands a sum of money under a warrant, directing him to enforce it, the party of whom he demands it may fairly assume that, if he seeks to act under the

process at all, he will make it effectual, and the demand itself is equivalent to a service of the writ on the person; that any payment is to be regarded as involuntary which is made under a claim involving the use of force as an alternative, as the party of whom it is demanded cannot be compelled or expected to await actual force, and cannot be held to expect that an officer will desist after once making demand; and that the exhibition of a warrant directing forcible proceedings, and the receipt of the money thereon, will be, in such a case, equivalent to actual compulsion.

b—That there has been some confusion among the authorities as to the necessity or effect of a protest in such cases, but the question has not often arisen upon the service of *legal* process; that in some cases it has been intimated that it might be necessary in order to recover back a payment from the person to whom it was actually paid, after he had paid over the money under his agency, but where the person demanding and receiving the money does so under color of process, as a legal officer, the payment must be deemed involuntary, because the party paying has no legal means, by appeal or otherwise, of preventing the seizure of his property.

c—That where, in such a case, the money is not paid under protest, no interest should be allowed until demand or action brought, so as to put the party sued in actual fault for not making satisfaction as soon as the wrong is pressed upon his notice.

4. *City of Detroit v. Martin*, 34 Mich. 170, holding that the sale of a lot in a city to satisfy an assessment made thereon under an unconstitutional act of the Legislature creates no cloud upon the owner's title, and that a payment by him of the assessment under protest, and upon the threat of the city, through its proper officer, to sell the lot if the assessment is not paid, that being the only method by which such payment could be enforced, is voluntarily made, and the money cannot be recovered back.

5. *Gebhart v. East Saginaw*, 40 Mich. 336, where a property-owner, whose lands had been assessed for the grading of a street, contested his liability, and a levy was made upon his property to satisfy the assessment, and he made an arrangement with the city authorities to deposit his check for the amount with the city treasurer, and to institute an amicable suit to determine his liability, and accordingly sued the city to recover back the money so paid. And it was held that, admitting that the delivery of the check to the city treasurer was, under the circumstances, equivalent to payment, it was a compulsory payment, because made under the stress of legal process, and the plaintiff was therefore entitled to bring his suit.

6. *City of Grand Rapids v. Blakely*, 40 Mich. 367, where plaintiff sued to recover back a street-improvement tax, which he had paid under protest upon the demand of the marshal, under color of a tax roll and warrant in his hands, which he held out as in force, and about to be executed in case of non-payment, but which roll was invalid by reason of jurisdictional defects.  And it was held that the contention that, as the fund was not for city use, the city was not liable, was untenable; that, if the money was illegally exacted by the marshal under color of city authority, and by him paid to and received by the city, the latter could not escape liability by reason of the special object of the tax.

7. *Louden v. East Saginaw*, 41 Mich. 18, where plaintiff sued to recover moneys paid under protest by himself and assignors under an assessment for paving a street, and it appeared that the only

irregularity in the proceeding was that the notice of the hearing of objections to the assessment was for Sunday, instead of Monday, as fixed by the city council; that on said latter day the assessment was confirmed without objection, and its collection intrusted to the treasurer, to whom payment was made by plaintiff and several of his assignors on the day preceding the expiration of the treasurer's warrant, and except as to one of said assignors, who was not personally liable, under the pressure of a threatened levy upon their personal property, and that on the same day the council, upon the request of certain tax-payers, extended said warrant for 30 days, at the expiration of which time the remaining assignors, who had joined in the request for the extension, paid their assessments. And it was held:

*a*—That the objection that no action lies to recover illegal assessments, paid under compulsion, by action against the city itself, is not open to discussion, the contrary having been expressly held in *Nickodemus v. City of East Saginaw*, 25 Mich. 456.

*b*—That the notice of the hearing of objections to the assessment was a bad notice, and did not bind the parties interested, but it was an *irregularity* which they might waive, and which waiver would make the assessment entirely legal.

*c*—That the payments by the plaintiff and all of his assignors, except the one not personally liable for the assessment, having been made under pressure of a threatened levy upon their property, were not voluntary; that, as to said assignor, the payment of the assessment under protest was an assertion of its illegality; that he could not know that it was illegal without knowing in what the illegality consisted, and he could have applied to the council to set the assessment aside; that he was under no immediate pressure, and the assessment had not yet become a lien on his land; and that his payment, therefore, was voluntary.

*d*—That the assignors who paid after the warrant had been extended knew of the assessment, because they knew of the original warrant before it ran out; that, instead of objecting to any supposed illegality, they saw fit to ask for the extension, which they obtained, and this was a waiver of the irregularity in the notice.

*e*—That an instruction to the jury that the money paid on the assessment was not city money, but belonged to the contractor, and that all city liability was at an end as soon as the money was turned over to him, and that the parties should have asserted their rights while the money was under the control of the city, was incorrect; that an action would lie upon a proper foundation, the right and duty of the city to refund being recognized in the charter.

8. *Moss v. Cummings*, 44 Mich. 359, where the plaintiff sued to recover back taxes paid to the defendant under the compulsion of his process, which taxes were alleged to be illegal because the supervisor, instead of assessing the property of the township at its true cash value, assessed the real estate at one-third and the personal property at one-half of such value, and failed altogether to assess much personal estate that should have been brought into the list. And it was held that, if tax proceedings on their face are fatally defective, a suit will lie to recover back money paid under them, but that a tax assessment is in the nature of a judgment, and cannot be assailed for fraud or irregularity in a suit against an officer who holds process fair on its face for enforcing a tax based upon it.

9. *Avery v. City of East Saginaw*, 44 Mich. 587, where defend-

ant's board of review, on the last day of its session, and without notice to the plaintiffs, increased their personal-property assessment from $6,000 to $23,000, and they paid the tax extended on the increased assessment under compulsion and protest, and sued to recover back the moneys so paid.  And it was held that the change in the assessment was unauthorized, but that the original assessment, which was not complained of by the plaintiffs during the sessions of the board of review, should stand, and, the tax paid up to that amount being a proper charge, which the plaintiffs were equitably bound to pay, they should only recover the excess.

For cases decided, with the exception of that first cited, after the passage of the tax law of 1882, see:

### Presentation of Claim for Allowance.

1. *Louden v. East Saginaw*, 41 Mich. 18, *Mead v. City of Lansing*, 56 Id. 601, and *Crittenden v. City of Mt. Clemens*, 86 Id. 220, holding, under the facts of each case, that a recovery by the plaintiff was barred by reason of his failure to present his claim to the city council for allowance before bringing suit.

2. *Whitney v. City of Port Huron*, 88 Mich. 268, holding that where, after the presentation to defendant's council of a claim for taxes paid under protest, four meetings of the council were held without any action being taken regarding the claim, a suit brought at the expiration of 36 days from such presentation, and two days after the last council meeting, was not premature, under a charter provision barring such action if commenced before the council should have had a reasonable time to investigate and pass upon the claim.

### Sufficiency of Protest.

1. *Peninsula Iron Co. v. Township of Crystal Falls*, 60 Mich. 79, where plaintiff paid the taxes assessed against its real estate for the year 1883 under protest, on the grounds that the lands were unequally and unjustly assessed, and that the township and highway taxes were illegal and unjust. And it was held that the ground of inequality of assessment, which was the only one which could be called a distinct ground of illegality, was insufficient, without some more definite indication of the *nature* of the inequality.

2. *Whitney v. City of Port Huron*, 88 Mich. 268, holding that where a tax-payer claims that the whole proceedings for the grading and paving of a street are void for want of jurisdiction, and on paying the taxes assessed against him on account of such improvement there is indorsed on the tax receipt a statement that the payment is made under protest, to protect the property from being sold, and on account of taxes being illegal, the protest is sufficiently specific.

3. *McFarlan v. Township of Cedar Creek*, 93 Mich. 558, holding that a protest against the payment of a special township highway tax, because the tax is levied against all of the property of the township indiscriminately, to pay highway orders payable out of the highway moneys of certain road districts, instead of against the property of each road district on which the orders are drawn, and out of the funds of which they are payable, is sufficient.

### Declaration.

*Mills v. Township of Richland*, 72 Mich. 100, holding a declaration in a suit against a township to recover taxes paid under a statutory protest to be sufficient which contained a count for money had and received by the defendant for plaintiff's use, and counts for alleged

indebtedness of the defendant to the plaintiffs for money collected from them by defendant's treasurer for State, county, town, highway, and school taxes assessed against them and their property, and paid to said treasurer under written protest signed by the plaintiffs, alleging such taxes to be illegal for reasons stated in said protest, and averring that, by reason of the premises, an action had accrued to the plaintiffs by virtue of the statute, citing it, to recover said several amounts from the defendant, and that, in consideration thereof, the defendant promised to make such payment, but had neglected to do so.

### Miscellaneous Cases.

1. *Camp v. Township of Algansee*, 50 Mich. 4, holding that *assumpsit* will not lie against a township to recover back an illegal drain tax levied under the drain law of 1875, and paid under protest to the township treasurer, said money not being received by him for the township, or as money to be used in a township matter.

2. *Wood v. Township of Norwood*, 52 Mich. 32, where a member of the board of supervisors, with knowledge of the facts, and without objection, voted for the assessment upon his township, as a part of the township tax, of a sum of money to refund to the township treasurer funds alleged to have been stolen from him, and afterwards sued to recover back the township taxes assessed against him, which he had paid under protest as illegal, because consisting in part of said sum of money. And it was held that as the tax law expressly authorized the board of supervisors to examine into the certificates of money to be raised in townships, and directed them to "hear and duly consider all objections made to raising any such moneys, by any tax-payer to be affected thereby," the plaintiff could not complain of his own act, and recover back taxes which probably would not have been laid if he had made timely objection.

3. *Lyon v. Receiver of Taxes*, 52 Mich. 271, where plaintiffs, after entering upon the discharge of their duties as assignees of an insolvent corporation, paid to the defendant, under a verbal protest, a personal-property tax assessed against the corporation, but which was not a lien upon its personal property, the receiver having first stated to them, while standing in the store where the assigned property was situated, that he had selected the goods upon which he was ready to make a levy to satisfy said tax, and threatened to do so, and take the goods away, unless plaintiffs paid the tax. And, in a suit brought to recover back the moneys so paid, it was held:

*a*—That section 42 of the tax law of 1882, then in force, and which provided for the payment of taxes under protest, did not apply to taxes upon *personal* property.

*b*—That under *Bank v. Watkins*, 21 Mich. 483, *Atwell v. Zeluff*, 26 Id. 118, and *Detroit v. Martin*, 34 Id. 174, the payment was not voluntarily made; that it was not the case of a person whose property had been illegally assessed, and against whom the collector's warrant ran, but an attempt to take the property of one person to pay another person's tax, which cannot be done under our Constitution and laws; that the payment of the tax was made under protest; that the assessment, or any part thereof, was neither due nor owing to the defendant from the plaintiffs, except under the terms of the trust created by the assignment and that, it not being claimed that the defendant had paid the money over to the city, no other party was liable.

4. *Herrick v. City of Big Rapids*, 53 Mich. 554, holding that it is not competent to assess a legatee for a legacy not yet due, and still in the hands of executors; and, where such legacy is the only thing assessed, there is no legal objection to reaching the rights of the parties as asserted by the payment of the tax under protest, and bringing a suit to recover back the same.

5. *Daniels v. Township of Watertown*, 55 Mich. 376, holding that, where the tax is collected by the treasurer of the township, no further proof is required than to show that he received the money in his official capacity, in order to fix the liability of the township to refund the money in case the tax is shown to be illegal.

6. *Lake Superior Ship Canal Railway & Iron Co. v. Township of Thompson*, 56 Mich. 493, where plaintiff paid certain highway taxes under protest, on the ground that they were excessive, and, within the statutory 30 days, sued to recover back the moneys so paid, and it appeared on the trial that plaintiff's claim was correct. And it was held that the portion only which was excessive could be recovered.

7. *Peninsula Iron Co. v. Township of Crystal Falls*, 60 Mich. 79, where the plaintiff, in December, 1883, paid its real-estate taxes under protest, and, in a suit brought within the statutory 30 days to recover back the money, the protest was found to be insufficient. And it was held that whether recovery could be had, as at common law, without a protest, was a question which did not come up as a general question, but as one applicable to the facts in the record; that while the statute allowed payment of land taxes under specific protest to be made in December, to avoid percentage, there was no power in the treasurer to enforce payment until January, and hence a payment made in December was voluntary, and could not be recovered back without a compliance with the statute in making a specific, instead of a general, protest.

8. *Peninsula Iron Co. v. Township of Crystal Falls*, 60 Mich. 510, holding that the only right to sue for a payment of taxes, which would have been voluntary and not recoverable except by force of the statutory protest, rests entirely upon the protest, and the tax must be shown to be "illegal for the reasons specified in the protest."

9. *White v. Township of Millbrook*, 60 Mich. 532, where the plaintiffs, in January, 1883, paid to the defendant's treasurer, under a sufficient written protest, the tax assessed upon their real estate and personal property for 1882, and, within the statutory period, sued to recover back the tax, which was paid without demand or threatened levy, and which was not shown to be invalid. And it was held that it is not the protest that gives a cause of action, but the illegality of the tax; that the protest only determines the *time* from which the tax may be recovered, and when the limitation of the right to bring an action against the township begins to run for the causes mentioned in the protest; that it does not make the payment involuntary when there has been no effort to collect, or demand for payment made, but permits the action to be brought, when the payment is voluntary, for the causes mentioned in the protest.

10. *Babcock v. Township of Beaver Creek*, 64 Mich. 601, where a non-resident firm, in January, 1885, paid to defendant's treasurer under protest, alleging, as the sole ground of illegality, an excessive valuation, the taxes assessed upon their personal property in the name of one member of the firm for the year 1884, which payment was made by their agent, after a demand by the treasurer

upon them by letter for the taxes, he having in his hands a tax roll in proper form to warrant him in enforcing the tax. And, in a suit brought to recover the money so paid, it was held:

a—That this was not a protest under the tax law of 1882, which did not apply to personal property, but one made on a payment alleged to have been involuntary, and therefore, if not due, liable to be demanded back as money paid without consideration, under legal pressure; that it was recoverable as such, if at all, and the protest did not stand in the way of such recovery.

b—That the payment was none the less involuntary because the assessment was in form against one partner alone.

c—That a demand of payment by an officer having a warrant involves an implication that payment will be enforced if not made; that the authorities do not require an actual levy, or proof that it could have been made on tangible property; that, if the party yields to the legal menace, it cannot be presumed, in favor of the exactor of payment, that he could have found nothing to levy on, or that there were no means of enforcement.

11. *Baker v. City of Big Rapids*, 65 Mich. 76, holding that the payment under protest in December, 1885, without any demand or threatened or actual levy, of a personal-property tax assessed under the tax law of 1885, which did not authorize the treasurer to enforce the collection of the tax during December, unless justly apprehensive of its loss, was a voluntary payment, and a suit for the recovery of the money could not be maintained.

12. *Babcock v. Township of Beaver Creek*, 65 Mich. 479, where plaintiffs' property was seized to satisfy taxes assessed for the year 1884 upon lands not owned by nor listed to them, and, in order to release the property, they paid said taxes under a *verbal* protest, and, after the State and county taxes had been turned over to the county treasurer, sued the township to recover back the money so paid. And, in affirming a judgment in their favor for said money, it was held that certain requests of the defendant for findings were properly rejected, because:

a—The facts assumed in the third request, namely, that if the plaintiffs paid the taxes because of the seizure of their property, when the treasurer had no right to seize it, such payment was voluntary, clearly showed that it was not a voluntary payment, but one made under protest, after plaintiffs' property had been placed in jeopardy.

b—That the fourth request, namely, that money paid on a tax, when the property of the person paying the same is not placed in jeopardy, and when there is no right to enforce payment by process, is a voluntary payment, was not applicable to the case; that the proceeding on the part of the treasurer was not an attempt to collect an illegal tax assessed against the property of the plaintiffs, or against them personally; and that the warrant did not direct or authorize the treasurer to demand the money paid of the plaintiffs, nor require him to enforce collection against them.

c—That in regard to the fifth request, namely, that, in order to maintain the action upon the ground of any imperfection in said tax, the plaintiffs should have presented to the township treasurer, at the time of paying the same, a written protest, specifying the grounds of objection, and that, not having done so, they were precluded from claiming that the tax was invalid, and that its payment, under such circumstances, was voluntary, and therefore they could not recover, it need only be said that the plaintiffs did not

complain of any imperfection in the tax which they were compelled to pay; that said tax was not against the plaintiffs, or their property; and that there was no occasion for making the finding requested.

*d*—That the rule contended for in the sixth request, namely, that in no event could there be any recovery for the State and county taxes, because the township treasurer had paid them over to the county before the action was brought, could not be sustained, as there were no facts in the case to warrant its application; that, under the pretense of authority, and that plaintiffs owned the lands assessed, the township, by its officers, coerced the payment of the money sued for, whereas it had no such pretended claim against the plaintiffs, and no authority, or even color of authority, to take their money.

*e*—That the seventh request, namely, that, the action not having been brought within 30 days from the time of payment of the taxes, the plaintiffs could not recover therefor, but were barred by the statute, was improper, as the statute had no application to cases where the money paid was not upon an assessment against the payor or his property.

13. *Michigan Land & Iron Co. v. Township of Republic*, 65 Mich. 628, where plaintiff mailed a letter to defendant's treasurer, containing a draft for the payment of taxes, and a notice that the same were paid under protest, and kept an *accurate* copy of the notice, and received a postal-card, in the handwriting of the treasurer, acknowledging the receipt of the draft and notice, and the copy was received in evidence in a suit to recover the taxes paid, without notice to produce the original or proof of its loss.    And it was held that the protest was a mere notice, and, after proof of its service, was provable by the copy.

14. *Cox v. Welcher*, 68 Mich. 263, holding:

*a*—That a payment of taxes in advance of the time it can be enforced is voluntary, and cannot be recovered back without statutory permission.

*b*—That where payments are involuntary, and made under legal duress, there has never been any rule requiring a specific protest.

*c*—That the attempt to compel payment where there is no legal burden is regarded as a legal injury, and payment made to avoid the seizure and sale of property to pay the wrongful claim may be recovered back as an extorted sum for which there was no consideration.

15. *Fletcher v. Township of Alcona*, 72 Mich. 18, where, after plaintiffs had conveyed certain pine lands by a deed containing a reservation of the timber standing thereon, the supervisor of the township in which the lands were situated, with actual and constructive notice of the conveyance, assessed a portion of the lands to the plaintiffs, and the timber on the remaining lands to them as personal property, for the year 1886, and on the last day of January, 1887, defendant's treasurer, by virtue of his roll and warrant, seized the property of the plaintiffs to satisfy the taxes levied by virtue of said assessments, and the plaintiffs, to procure a release of their property, paid the tax under protest, and sued the township to recover back the money so paid.    And it was held that the tax was illegally assessed, and plaintiffs, having paid it under protest, had a right to recover it back.

16. *Mills v. Township of Richland*, 72 Mich. 100, holding:

*a*—That a payment of taxes assessed against plaintiffs' lands for

1884, made under a specific protest in December of that year, was not a voluntary payment; citing Tax Law of 1882, § 42; *Iron Co. v. Township of Crystal Falls*, 60 Mich. 79, 510; *White v. Township of Millbrook*, Id. 532.

b—That whether or not the division by the board of supervisors in January, 1884, of the defendant township, which consisted of two governmental townships of land, and the organization of one of them into a separate township, was legal, which action was assigned as one of the grounds of protest against the payment of the taxes afterwards assessed against the plaintiffs for 1884 in the original township, could not be determined in a suit to recover back said taxes.

17. *Taylor v. Township of Avon*, 73 Mich. 604, holding that an action to recover drain taxes assessed under Act No. 227, Laws of 1885, and paid to the township treasurer under protest, in reliance upon section 42 of the tax law of 1885, could not be maintained against the township, said section only applying to taxes assessed under said general tax law.

18. *Turnbull v. Township of Alpena*, 74 Mich. 621, holding that a township treasurer has no right to accept the note of a tax-payer in payment of his taxes, and that such an attempted payment, made under protest, cannot be recovered back by the tax-payer in an action against the township.

19. *Solomon v. Township of Oscoda*, 77 Mich. 365, where, by an agreement between the supervisor and members of the board of review, salt, lumber, and logs, valued at $800,000, and liable to assessment in their township, were not listed for taxation or assessment, and a tax-payer paid her taxes under protest, and brought suit for the recovery of the money, and it was urged by the defendant township that the plaintiff did not show the excess of taxes over those which she would have been obliged to pay had she been legally and properly assessed. And it was held that such is undoubtedly the general rule, but, where the illegalities are such as to make it impossible to ferret out the legal from the illegal taxes which the tax-payer should pay, the rule does not apply; and that the case at bar was within the exception, and a judgment in plaintiff's favor was affirmed.

20. *Whitney v. City of Port Huron*, 88 Mich. 268, where, after the city treasurer had advertised plaintiff's property for sale on a special assessment levied for paving a street, she paid the same under protest, and sued to recover the moneys so paid.    And it was held that the fact that the sale would have conveyed no title to the purchaser on account of the illegality of the tax, or that she could have removed the cloud upon her title caused by such sale by legal proceedings, had no bearing upon her right to pay the tax under protest, and thereby stop the sale; that if a citizen's property is threatened with seizure upon a tax warrant, or his real estate is advertised for sale to collect delinquent taxes, he is, equally in both cases, entitled to free his property by a payment of the tax under protest, and such payment will not be considered voluntary.

21. *Gratwick, etc., Lumber Co. v. Village of Oscoda*, 97 Mich. 222, holding that a tax-payer in a village, who appears before the board of review and has a hearing upon his objections to the amount of his assessment, cannot, in a suit to recover the tax, which he paid under protest, raise the objection that the assessor failed to require the tax-payers to make sworn statements of their

LUMBER CO. v. TOWNSHIP OF MANISTEE.     483

taxable property, as provided by the general tax law of the State; it appearing that the act under which the assessment was made did not require the assessor to provide himself with blanks for that purpose, nor that they should be furnished him by the Auditor General or county treasurer, and it not appearing that the plaintiff was in any way injured by the failure of the assessor to require such statements to be made.

22. *Minor Lumber Co. v. City of Alpena*, 97 Mich. 499, 501, where plaintiff, by its agent, paid to defendant's treasurer certain State, county, and city taxes under protest, and, in a suit brought to recover back the money, it appeared that the treasurer had at the time in his hands two rolls, one for the State and county taxes, and the other for the city taxes. The time for the collection of the State and county taxes had not expired, but had for the collection of the city taxes, and the defendant claimed on the trial that plaintiff's agent knew of this, and was aware that no levy could be made for the city taxes, and therefore his payment of the city taxes was voluntary, and plaintiff could, under no circumstances, recover back what it had paid; while the agent claimed that the treasurer gave him a written statement of certain lumber he had levied upon for the taxes of 1890, being the year for which the taxes so paid were assessed, which contained the State, county, and city taxes, and also testified that the treasurer threatened to sell the lumber for *all of these taxes* unless they were paid at once. The treasurer denied this, and testified that he only claimed the right to sell for the State and county taxes. A verdict was directed for the plaintiff for the city taxes, on the sole ground that the warrant for their collection had expired at the time of the threatened levy, and that, having at that time no right to seize the property of the plaintiff, the payment under protest authorized the recovery; and a recovery for the State and county taxes was denied. And it was held:

*a*—That certain facts must appear to enable a party to recover taxes paid under protest, the most important of which is that the tax is void; that plaintiff's right to recover must be based upon the claim that the city has money in its custody which in equity and good conscience it ought to repay to the plaintiff; and that the case was ruled by *Lumber Co. v. Village of Oscoda*, 97 Mich. 221, which in effect overruled *Phillips v. Township of New Buffalo*, 68 Mich. 217, upon the point under discussion.

*b*—That if the agent knew that the city treasurer could not sell the lumber for the city taxes, and that he did not intend to sell it for said taxes, the payment was voluntary, and the plaintiff could not recover back the moneys so paid, even though the taxes, or some of them, should be found to be void, as it would not be a payment under coercion; but, on the other hand, if the treasurer threatened to sell the lumber for *all of these taxes*, and such taxes were void, the plaintiff had the right to pay under protest, and then recover back such taxes as were void.

23. *Monroe Water Co. v. Township of Frenchtown*, 98 Mich. 431, holding:

*a*—That where taxes are assessed against a corporation, and it pays them under protest, and sues to recover the money, the defendant cannot be heard to say in said suit that the plaintiff is not legally incorporated.

*b*—That where land owned by a water company, on which its pumping works are located, and in which its pipes are laid, lies in one township, and its principal business office is located in a

city outside of said township, and the land is assessed by the supervisor without regard to the water pipes, which, if regarded as personal property, are assessable in said city, and the board of review add to the roll a personal-property assessment on account of the pipes, and the evidence in a suit brought to recover said personal tax, paid under protest, fails to show that the company had actual notice of the personal-property assessment, the company will not be presumed to have had knowledge thereof, and it cannot be said that no injustice will be done the company by compelling it to pay the personal-property tax upon the theory that the rate of taxation in the township is the same on real and personal property.

24. *Matrau v. Tompkins*, 99 Mich. 528, where, in a suit brought by the plaintiff to recover certain drain taxes paid under protest, it appeared that, prior to 1890, a county drain had been constructed, and plaintiff assessed for benefits to his land the sum of $252, one-half of which was to be assessed in 1890, and the remainder in 1891; that he paid the 1890 assessment; that in 1891, by mistake, only $13.50 of the second installment was assessed, which he paid; that in 1892 the land was assessed for the remaining $112.50, and for plaintiff's share of the expense of certain litigation over the construction of the drain; that the tax roll for that year was in due form, and showed these assessments; that on February 20, 1893, plaintiff paid these taxes to the township treasurer under protest, and, on March 3 following, the money was paid over to the county treasurer. On March 6 plaintiff brought his suit, and on the trial the court directed a verdict in his favor for the amount of the tax, on the ground that it was not properly on the roll, in consequence of the omission of the drain commissioner to file the record relating to the construction of the drain with the county clerk, as required by 3 How. Stat. §§ 1740a9, 1740b, but which record was filed during the trial. And it was held that the amount of this drain tax seemed to have been properly ordered to be assessed by the board of supervisors, and went into the roll for 1892; that the objection made was purely technical, and, no equities appearing in favor of the plaintiff, a verdict should have been directed in favor of the defendant.

25. *Weston v. County of Luce*, —— Mich. —— (61 N. W. Rep. 15), holding:

*a*—That section 58 of the tax law of 1893, which authorizes the county treasurer, after the return of lands for unpaid taxes, to receive, under like provisions as in section 53 of the act, the amounts of the several taxes or any of them due, does not authorize the payment of taxes to the county treasurer under protest, and the bringing of a suit against the county to recover back the moneys so paid.

*b*—That the payment by a land-owner to the county treasurer, under protest, of illegal taxes assessed against his land, in order to secure from that officer the certificate required by the tax law, of 1893 as to the payment of taxes to entitle his deed, given to a prospective purchaser, to record, does not constitute payment under duress, so as to give to the land-owner a common-law right of action against the county for the recovery of the moneys so paid, although he would otherwise have been prevented from making such sale.