## FRED LOUDEN v. EAST SAGINAW.

*Waiver of defects in assessment of taxes.*

Action lies against a municipal corporation to recover back illegal assessments paid under compulsion. The charter of East Saginaw recognizes the city's power to refund such assessments.

A notice which by clerical error fixed Sunday as a day for hearing objections to the assessment of a tax, is not binding, but the defect can be waived.

Defective notice for hearing objections to an assessment may be waived by taking an extension of time for payment, or by voluntary payment.

Paying a tax under protest is an assertion of illegality.

A purchaser from one whose land has been irregularly assessed is not obliged to pay the tax on account of his vendor, nor is he personally liable to seizure of his goods for failure to pay; but if he pays without making known his objections to the proper auditing body before the amount becomes a lien on the land, the payment must be considered voluntary.

The provisions of a municipal charter must be construed together in their bearing on a legal question.

Objections to alleged irregularities in the assessment of taxes must be made to the auditing body of the municipality within a reasonable time.

Every tax-payer is assumed to know the usual course taken to enforce payment directly, or in case of a return of delinquent property.

Where there is nothing to go to the jury, an instruction denying the right of recovery on some other ground is not a prejudicial error, and a judgment based thereon will be affirmed.

The party alleging error must show error to his prejudice.

Case made from Saginaw. Submitted April 17. Decided June 4.

ASSUMPSIT. Defendant had judgment below.

*Lorenzo T. Durand* for plaintiff. The meeting of the auditing body to hear objections to assessments, and notice of this meeting are matters of constitutional right to the tax-payer, and the notice must be given in strict

observance of all requirements, and cannot be shortened a day, nor be effectual for a day when the council do not meet, Cooley on Taxation, 217, 218, 227-8, 265-7, 335-6, 460, 528-9; Dillon Mun. Corp., § 643 n; *State v. Jersey City*, 27 N. J. Law, 536 : 26 N. J. Law, 444 : 25 N. J. Law, 309 : 4 Zab., 662; *Nixon v. Ruple*, 30 N. J., 58; *Cleghorn v. Postlewaite*, 43 Ill., 428; *Marsh v. Chesnut*, 14 Ill., 223; *Darling v. Gunn*, 50 Ill., 424; *Nashville v. Weisel*, 54 Ill., 249; *Dickey v. Tennison*, 27 Mo., 373; *Thames Mfg. Co. v. Lathrop*, 7 Conn., 555; *Lowell v. Wentworth*, 6 Cush., 221; *Whitney v. Thomas*, 23 N. Y., 286; *Sherwin v. Bugbee*, 17 Vt., 337; *Metcalf v. Messenger*, 46 Barb., 325; *Thomas v. Gain*, 35 Mich., 164; a tax-payer can bring an action for money had and received to recover back the amount of an illegal assessment collected from him by a municipal corporation, Cooley on Taxation, 569; Dillon Mun. Corp., § 751; *Bradford v. Chicago*, 25 Ill., 412; *First Nat. Bank of Sturgis v. Watkins*, 21 Mich., 483; *Henry v. Chester*, 15 Vt. 460; *National Bank of Chemung v. Elmira*, 53 N. Y., 59; *Bank of Commonwealth v. Mayor*, 43 N. Y. 184; *Newman v. Supervisors*, 45 N. Y., 676; *Lauman v. Des Moines County*, 29 Iowa, 310; *Grand Rapids v. Blakely*, 40 Mich., 367; *Joyner v. Third School Dist. in Egremont*, 3 Cush., 567; *Detroit v. Martin*, 34 Mich., 170.

*T. E. Tarsney* for defendant. Actions for money collected on void assessments must be against those who have received the money, and not against the tax-collector, *Nelson v. Milford*, 7 Pick., 18; *Vermont Central R. R. Co. v. Burlington*, 28 Vt., 193; *Spear v. Braintree*, 24 Vt., 414; *Slack v. Norwich*, 32 Vt., 818; *Matheson v. Mazomanie*, 20 Wis., 191; *Dickins v. Jones*, 6 Yerg., 483; *Crutchfield v. Wood*, 16 Ala., 702; *Granger v. Hathaway*, 17 Mich., 500; if jurisdiction to levy an assessment has been obtained, any error on the part of the body levying it, or its officers, will not make the assessment void, and certiorari lies to review its erroneous action, *LeRoy*

*v. New York*, 20 Johns., 430; *People v. New York*, 5
Barb., 43; *Matter of Mount Morris Square*, 2 Hill, 14;
*Starr v. Rochester,*, 6 Wend., 564; *Gibbs v. County Com'rs*
19 Pick., 298; *Newburyport v. County Com'rs*, 12 Met.,
211; *Lincoln v. Worcester*, 8 Cush., 55; *Parks v. Boston*, 8 Pick., 218; *Floyd v. Gilbreath*, 27 Ark., 675; *State
v. St. Louis County Court.*, 47 Mo., 594; *State v. Dowling*, 50 Mo., 134.

CAMPBELL, C. J.   Louden sued the city of East Saginaw to recover back moneys paid under protest by himself and others who had assigned to him, under an
assessment for paving Genesee street between Jefferson
and James streets.   The pavements were made in September, 1872, and October, 1872.   The record, which is
carelessly made up, does not show when this suit was
commenced, but it is assumed to have been in time to
avoid the limitation of six years, if that is to govern in
the decision.   As the court below directed judgment for
defendant because no sufficient claim was made in time
against the city, it becomes necessary to know just where
the parties stand.

On the 28th of August, 1871, upon a petition and
reference, a committee of the common council reported
in favor of a wooden pavement on the section of the
street in question.

On the 11th of September, 1871, the council passed
a series of resolutions declaring the necessity of the
improvement, defining its extent, and determining the
street should be paved with Nicholson, McGonegal, or
some other wood pavement; determining that this part
of the work should be charged on the owners and occupants of the property benefited; directing the preparation
of plans, profiles and specifications, and ordering advertising for proposals.

Proposals were received and accepted, and a contract
ordered for the McGonegal pavement.

On the 13th of November, an estimate was filed, and

the council appointed a committee who subsequently reported what property would be benefited.

On the 8th of January, 1872, a resolution was adopted setting out the whole expense at $6,852 and directing the amount to be assessed on the property therein specified.

The assessment was made and reported to the council, who fixed May 13, 1872, for hearing objections. Notice was given which fixed the day of hearing on May 12th, which was Sunday, instead of May 13th. On May 13th the assessment was confirmed in the absence of any objections. In due time the collection was entrusted to the treasurer by warrant returnable September 29, 1872. On the 28th Louden and several of his assignors paid under protest to the treasurer $668.13. Of this Casper Eschenbach paid $258.35, which had been assessed to Jacob Beyer, of whom he purchased the property assessed to him about the time the assessment was made out. On the 28th of September, at the request of twenty-five citizens and tax-payers on the roll, the roll was extended thirty days. At the end of that time the remaining assignors paid their assessments, amounting to $819.52. By examination of the assessment notice it appears there were thirty-eight names of owners and occupants, and that thirteen paid their assessments in September. The October payments were therefore all made by persons who had been active in procuring this extension.

The treasurer paid out all the money thus received by him to the contractors. The record does not disclose the terms of the contracts. The court below held that the assessment was invalid by reason of the failure to give notice of the meeting to consider objections to the assessment, but denied the right of recovery because the money had been thus paid over before any claim was laid before the council.

It becomes necessary to consider the position of the assessment at its various stages under the charter, in order to determine the precise condition of the litigation.

A preliminary objection, that no action lies to recover illegal assessments paid under compulsion, by action against the city itself is not open to discussion. It was expressly decided in *Nickodemus v. East Saginaw*, 25 Mich., 456, that such recovery was allowable. That action was for an assessment paid for paving the same Genesee street to which the present controversy refers. And the charter recognizes in several places the power of the city to refund such assessments. Title 6, § 58; title 11, § 24.

No irregularity is pointed out earlier than the defective notice already referred to. The objection that no choice of kinds of paving was made before receiving bids is not, we think, well founded. The course taken of receiving bids for the various methods was well calculated to create a proper competition, and we have not discovered any thing in the charter against it. Upon all other matters the statute of 1869 was fully complied with. The resolution of January 8, 1872, covers the ground of previous action objected to as imperfect, and was adopted by the proper number of yeas and nays.

By this preliminary action the cost of the work was lawfully required to be assessed on the property described, and in the absence of any valid objections raised and sustained by the council, this action is declared by the charter to be final. Title 6, § 37.

Nothing was left to be done further except the distribution of the burden by an assessment upon some uni_ form basis. So far as the assessment has been spread upon the record it apportions the cost by the frontage. But the property was all designated and the assessment made chargeable against it.

The case stands, therefore, on a very different footing from one relating to an entirely illegal assessment. The only illegality here was in a notice which may or may not have been seen by the parties. It was unquestionably a bad notice and did not of itself bind them. But it was an irregularity which any one could waive, and a waiver of which would make the assessment

entirely legal.   The conduct of the parties is therefore an important element of decision.

The first question which arises is how far the payment of the assessment is to be deemed compulsory and not voluntary.

By section 44 of title 6, as amended in 1871 (2 Sess. Laws of 1871, p. 1207), such assessments are made personal charges against the persons named in them.   They do not become a lien on realty unless returned unpaid. § 44.   The owner of the land may pay if he chooses at any time while it remains in the hands of the treasurer, with accrued interest.   If not sooner paid it goes upon the next tax-roll.

Plaintiff and all of his assignors except Eschenbach paid under pressure of a threatened levy and their payments were not voluntary.   But Eschenbach was not personally liable to have his own goods seized, and if the assessment was illegal he had no obligation to pay it on Beyer's account.   Paying under protest is an assertion of illegality.   He could not know it was illegal without knowing in what the defect was, and he could have applied to the council to set the assessment aside, and it is fairly presumable they would have done so, and ordered a reassessment under section 58.   He was under no immediate pressure, and the assessment had not yet become a lien on the land.   His payment therefore was voluntary, and cannot be recalled.

The persons who paid in October knew of the assessment because they knew of the original warrant before it ran out.   Instead of objecting to any supposed illegality, they saw fit to ask an extension, and they obtained an extension of thirty days.   We think this was a waiver of the irregularity.   Their action tended to mislead the city.

Leaving out the Eschenbach payment and the October payments, the principal sum of these payments is reduced to a total of $409.77.   If plaintiff can recover

at all, this is the largest amount of principal which this record shows to have been paid under compulsion. The party alleging error is bound to show error to his prejudice. The record is not satisfactory upon many points, but upon these we think the inferences unavoidable.

Assuming, then, that the amount named was paid under circumstances out of which a cause of action might properly arise, it remains to be seen in what way the plaintiff and his assignors were bound to proceed.

Under the charter the city treasurer is not required to report his doings to the council, but to the controller. Title 6, § 44 as amended by 2 Sess. L. 1871, p. 1207-8. It is certainly no more than right and proper that he should do so; but the statutes very clearly contemplate that any claim for re-imbursement shall be made directly to the council. Section 58 (2 Sess. L. 1869, p. 458) declares that "whenever any special assessment for the improvement of a street, or for any other public work shall, in the opinion of the common council, be deemed invalid, said council may vacate and set the same aside." It then provides for a re-assessment, and proceeds as follows: "Whenever any tax or any part thereof assessed upon any lot or parcel of real estate by the original assessment has been paid and shall not have been refunded, it shall be the duty of the assessor and controller to apply [such] assessment upon the re-assessment on said lot or parcel, and to make a minute thereof upon the new assessment roll, and such re-assessment shall be deemed paid and satisfied."

By section 24 of Title 11 (2 Sess. L. 1869, p. 461) the council is empowered, "whenever it shall appear that any taxes or assessments have been improperly or illegally made, assessed or collected, by a two-thirds vote of all the members elected, to cause such assessment or tax to be remitted or refunded; but no such action on the part of the council shall in any way affect or invalidate any other tax or assessment assessed, levied, or collected in said city."

By section 18 of Title 5 (2 Sess. L. 1869, p. 450) it is made the exclusive power of the council to appropriate moneys and authorize the payment of claims and accounts against the corporation. And it is made a bar to any action, either "that it has never been presented to the controller or common council for audit and allowance, or if so presented, was rejected for want of such affidavit, or that the action or proceeding was brought before the common council had a reasonable time to investigate and pass upon it."

The only action taken before suit that appears in the case is thus stated. Before the commencement of this suit the various parties under whom plaintiff claims "sold and assigned to him their respective demands against said city on account of such payment of said tax, and authorized him to bring suit therefor in his own name against said city, and that said plaintiff, before this suit was brought, made demand of said city of said tax so paid by himself and said assignors, and of the interest thereon from the said dates of such payment, which demand was refused by said city."

It is very much to be regretted that the record does not show the dates of these assignments, and the form and manner of the demand, and of the city action upon it. It cannot be presumed that it was made very long before suit brought, and the theory on which the case was argued made no particular demand necessary.

The court below instructed the jury that the money paid on the assessment was not city money, but belonged to the contractor, and that all city liability was at an end as soon as the money was turned over to him; and that the parties should have asserted their rights while the money was under control of the city.

We have already said that this doctrine is incorrect, and that an action will lie upon a proper foundation. The right and duty of the city to refund are recognized in the charter.

But the whole charter, so far as it relates to this

41 MICH.—4.

subject, must be taken together. The right to re-assess is the ordinary means whereby the city is to get back any such money refunded, if the assessment is one which can be properly laid. It is contemplated that no money shall be refunded and no assessment set aside except for defects which the council must see to be fatal. It is expressly declared that no proceeding shall "fail on account of any technical or clerical error made by any officer of the city." Title 6, § 50, 2 Sess. L. 1869, p. 455. It may be safely assumed that the city should by its common council be able to determine whether an assessment is entirely outside of its jurisdiction. But it would be a harsh and violent presumption to assume that under any general protest, specifying nothing, the council could find what particular slip or fault could be found in an assessment which was regularly and lawfully ordered, and only fell through by what was a clerical blunder, although one which cannot be called merely formal. And it would be grossly unjust to allow such a claim to sleep for several years, while the property may be changing hands, and the new purchasers or occupants liable to burdens they never dreamed of.

The council cannot be in fault for not knowing what a party means to complain of when he does not see fit to tell them. No one else than the council can meddle with the assessment or audit the claim. A protest made to the treasurer cannot relieve the council from its difficulties. It is well enough as far as it goes; but it is the duty of parties who have money claims to make them to the auditing body within some reasonable time, to prevent further difficulties. It is inequitable to allow action to be taken which would not have been taken except for their silence. In the present case, as already stated, there was an interval of thirty days before the roll was made finally returnable, after the parties making payments in September had entered their protest with the treasurer. It does not appear they gave him any means of knowing why they objected, and if they

had done so, the assessment would probably have been rectified without delay. Every one was bound to know what course was usually taken, both to enforce payment directly, and also to enforce it in case of a return of the property delinquent.

We think, in view of the character of these proceedings, and of the conditions laid by the charter on refunding and re-assessments, that every one who desires to claim the repayment of money paid under such an assessment, which is lawfully laid on the property up to the point of hearing objections, and which under the statute is in the aggregate a final charge on the district assessed, is bound without any unreasonable delay to lay his objections in some intelligible form before the council, so that they may be put actually in the wrong by any refusal to refund. It would be impossible to lay down without legislation, any specific time. Parties may stand on very different equities, according to their means of knowledge and diligence or lack of diligence, under the circumstances.   In the present case it is not only impossible to find on the record any excuse for delay, but there is nothing tending to show that the common council have even now any information concerning the objections relied on by plaintiff or his assignors.   If the record showed any attempt to bring their grievances fairly before the council, and a refusal by that body to act upon them when specified, we have no means of knowing it might not have been possible to explain some of the delay, although it certainly seems improbable. But there is nothing to show that any of these parties ever laid the grounds of their protests before the council, or made any application to which they were bound to listen.

We cannot see that there was any thing to go to the jury, and the error in the instruction was not prejudicial.

The judgment must be affirmed with costs.

The other Justices concurred.