WHITFORD, BARTLETT & CO. *vs.* WALTER L. CLARKE, City
Treasurer.

JULY 15, 1911.

PRESENT:  Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

*(1)  Taxation.  Payment Under Protest.*

Plaintiff sent to a tax collector a check for the amount of the tax levied against
him, containing on the face of the check the words "paid under protest"
and accompanied by a letter stating that check was enclosed to cover tax
and "I hereby enter my protest against the assessment and payment of
the above tax."  The collector gave plaintiff his tax bill receipted and endorsed on its face "protest on file."

*Held,* that the protest was sufficient.

SWEETLAND, J., dissents.

ACTION FOR RECOVERY of tax.  Heard on exceptions of
defendant and overruled.

BLODGETT, J.  This is an action for the recovery of a
tax against plaintiffs assessed on personal property by the
assessors of the City of Providence for the year 1905, said
tax amounting to $990 and claimed by the plaintiffs to
have been paid under protest and is before this court upon
the plaintiffs' exceptions to the direction of a verdict for the
defendant in the Superior Court.

It is conceded that the tax in question was illegally
assessed under the decision of this court in *Matteson v.
Warwick & Coventry Water Co.,* 28 R. I. 570, in that the time
prescribed by said assessors for the making of returns of
property liable to taxation on July 1, 1905, was fixed "from

the 12th to the 24th day of June, 1905, inclusive, Sunday excepted."

The single question presented is as to the sufficiency of the protest of the plaintiffs, who paid the tax on October 20, 1905, under the following circumstances. On that day they sent to the defendant, who is ex-officio collector of taxes in the City of Providence, a check in the words and figures following:

"PROVIDENCE, R. I. Oct 20 1905 No. 16771

INDUSTRIAL TRUST COMPANY

Pay to the order of Walter L. Clarke Treas        $1521.30
Fifteen Hundred Twenty One 30—            Dollars
    Paid under protest

                    WHITFORD BARTLETT & Co."

The check was accompanied by the following letter:

"PROVIDENCE, R. I. Oct. 20, 1905.

MR. WALTER L. CLARK, Treas.,
        Providence, R. I.

DEAR SIR:—

We enclose checks to cover taxes as follows:—

Check  Whitford, Bartlett & Co. tax.......    $990.00
        William E. Whitford..............    $366.30
        Asel P. Bartlett.................    $165.00
                                        _____
                                        $1,521.30

We hereby enter our protest against the assessment and payment of the above tax."   . . .

                    "Yours truly,
                    WHITFORD BARTLETT & Co."

On October 21, 1905, the defendant gave to the plaintiffs their tax bill duly receipted by him and endorsed on its face "Protest on file."

(1)    It is contended by the defendant that this was insufficient and that a protest in such a case is insufficient unless it specifies the grounds upon which the protest is based and

certain cases from other jurisdictions are cited in support of this contention.   But upon an examination of these we find the following:   In *Omaha* v. *Kountze*, 25 Neb. 60, a statute prescribes that the protest "shall particularly state the alleged grievance and ground thereof."   In *Davis* v. *Otoe County*, 55 Neb. 677, a statute provided that the collector must give to the taxpayer who paid under protest "a receipt therefor, stating thereon that they were paid under protest, and the grounds of such protest, whether not taxable, or twice assessed, and taxes paid thereon."   In *Traverse Beach Ass'n.* v. *Township of Elmwood*, 142 Mich. 78 (1905), the statute then in force (Sec. 3876, Compiled Laws Michigan 1897) required that a taxpayer who paid under protest must so pay "specifying at the time in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given."   In *Rogers* v. *Inhabitants of Greenbush*, 58 Me. 390, the sufficiency of the form of the protest was questioned, but the court declined to determine that question, observing, "We do not think it necessary to determine, whether the fact that the plaintiff, at the time he paid, 'protested against said taxes,' is sufficient to answer the requirement of the law, that the taxes were paid under protest."   .   .   .   "In the present case, as the parties desire a decision on the main question, we waive a decision on this question."   *Meek* v. *McClure*, 49 Cal. 623, also cited by the defendant appears to support his contention. But it should be observed that the later case of *Mason* v. *Johnson*, 51 Cal. 612, is cited by this court in support of the decision in *Rumford Chemical Works* v. *Ray*, 19 R. I. 456–460, which, in the absence of statutory provision, has established the rule in this state.   In that case it is said by Matteson, C. J. (p. 459):   "A voluntary payment implies that the man who makes it intends to waive any right which he may have to resist it.   When he gives notice by his protest that he does not waive his right, but intends to insist upon it, such implication is negatived," and on p. 460:   "The defendant also

makes the point that the protest is not sufficient because it does not specify the alleged illegality, and supports it by reference to a criticism in passing by the court upon a similar protest in *Railroad Co.* v. *Commissioners*, 98 U. S. 541. We see no reason for requiring a specification in the protest of the alleged illegality. All the facts connected with the assessment are certainly as fully known to the assessors as to the taxpayer, and they are in as good a position as he is to know whether the tax is legal or illegal. *Mason v. Johnson*, 51 Cal. 612."

We are accordingly of the opinion that the protest in this case was sufficient and that the plaintiff's exceptions must be sustained; and inasmuch as we understand there is no other question in the case the defendant may show cause on October 2, 1911, why judgment should not be entered for the plaintiffs.

SWEETLAND, J., dissenting. This case is before us upon exceptions to the ruling of the justice presiding in the Superior Court directing a verdict for the defendant.

The payment of the tax in question by the plaintiffs on October 20th, 1905, was entirely voluntary. Their real estate had not been levied upon, their personal property was not distrained, no suit for the collection of said tax had been commenced against them, nor had any such suit been threatened. In *Dunnell Mfg. Co.* v. *Newell*, 15 R. I. 233, the court said in regard to the plaintiff's contention that certain taxes were paid under compulsion, "because they were paid to a collector having a warrant to collect them by levy or distress. But they were paid before any step was taken or threat made to enforce them by levy or distress. The collector, if the taxes had not been paid, might have proceeded against the corporation by an action at law, in which the corporation would have had full opportunity to contest the validity of the taxes, instead of proceeding by levy or distress. To hold that the payments were compulsory, simply because the collector had his warrant,

would be practically to hold that all payments are compulsory, for the collector has no authority to collect without a warrant.   We think, therefore, that the taxes paid in 1881, 1882, and 1883 must be taken to have been voluntarily paid and that they cannot be recovered back.''   The rule with regard to payments, not alone of taxes, but of any kind, is that unless otherwise provided by statute, a payment made without coercion, with full knowledge of the facts, cannot be recovered back.   The voluntary nature of the payment is not affected by the fact that it is accompanied by a protest.   When a payment is made under duress to a party for his own use, a protest is unnecessary for the right to recover is based upon the duress and the protest adds nothing to the plaintiff's position.   If the payment under duress is made to a public officer then the person making payment should protest and in that protest should set out the grounds on which he claims the payment is illegal, in order that the public officer, or that branch of the government to which he is accountable or for which he is acting, may investigate the claim and have an opportunity of returning the money or not disposing of it until the claim can be considered, and particularly that a similar illegal claim may not be pressed in the future.   *Meek* v. *McClure*, 49 Cal. 623.   This rule as to the recovery of payments whether of taxes or otherwise is in accordance with reason and the weight of authority.   In many of the states statutes have been enacted which permit the taxpayer, who claims that the tax assessed against him is illegal, without waiting for some action on the part of the collector which would amount to duress, to pay the tax, file a protest and thus lay the foundation for a suit to recover back the money paid.   These statutes generally provide for the form of the protest and that it shall set forth all the grounds on which it is based.   It is some of these statutes that the court has found and referred to in the majority opinion.   It seems to me that the point in regard to them is not, as the majority opinion finds, that in the absence of statutory direction to

that effect the protest need not set out the grounds of the objection, but rather that in the absence of statute no effective protest can be made as to a payment not under coercion. I think there can be no question that the great weight of authority supports that position. In this state, however, without statutory provision, there has grown up an anomalous practice, under which a person, who claims an illegality in the tax assessed against him, without waiting for suit or levy, pays the tax, files a protest and brings suit to recover back the amount paid. The propriety of this practice has been recognized by our courts and is established. *Dunnell Mfg. Co.* v. *Newell*, 15 R. I. 233; *Savings Bank* v. *Granger*, 17 R. I. 77; *Rumford Chemical Works* v. *Ray*, 19 R. I. 456. The taxpayer, who thus pays under protest, should be placed in no better position than one who pays under coercion, he likewise should be required to set forth in his protest the illegality which he claims and he should be restricted in his action to the grounds set forth in his protest. Paying under protest must in reason be regarded as a definite claim of illegality, not as mere fault finding and a general objection to the payment of taxes, nor as a trap set to catch any reason which the next six years may develop. "He could not know it was illegal without knowing in what the defect was" (*Louden* v. *East Saginaw*, 41 Mich. 23), and it is no hardship to the taxpayer that he be required to state the illegality, in accordance with reasonable authority. *Dunnell Mfg. Co.* v. *Newell*, 15 R. I. 233; *Meek* v. *McClure*, 49 Cal. 623. In *Rogers* v. *Inhabitants*, 58 Me. 390, the court says: "We think that the law requires something more definite and distinct than general fault-finding, grumbling, complaint of injustice or inequality, even if in language it takes the form of protestation. It must be a distinct and definite protest against paying the particular tax, on the ground of its illegality. The form may not be material." To establish the opposite rule may be to seriously embarrass the several communities of the state in the assessment and collection of taxes. Under it tax-

payers who have in mind no special objection to the tax, but desire to place themselves in a position to recover back the tax paid, may file a protest in general terms and then take advantage of any defect that may be brought to their attention within the period of the statute of limitations. This may be done year after year, it might become the regular manner of paying taxes by those who would escape their public obligations. If later some technical irregularity is discovered in the method of assessing taxes, generally adopted by the boards of assessors throughout the state, as was declared in *Matteson* v. *Warwick & Coventry Water Co.*, 28 R. I. 570, those taxpayers who had adopted this protesting method of payment might recover back all the taxes paid by them during six years before, with disastrous effect upon the financial affairs of the town. That this is not a fanciful but a possible condition is shown by the case at bar. The protest in question was made upon October 20th, 1905. In January 1908, this court delivered its opinion in *Matteson* v. *Warwick & Coventry Water Co.*, *supra*, that the notice by the assessors of the town of Warwick to all persons liable to taxation to bring in an account of their ratable estate on a day previous to that upon which the tax was to be assessed was an improper notice and rendered the assessment invalid. This had been the method generally adopted by the various cities and towns of the state for a number of years. The suit at bar was commenced more than four years after the protest was made and the invalidity claimed at the time was the one pointed out in *Matteson* v. *Warwick & Coventry Water Co.*

The court has frequently said that the taxpayer who pays without protest cannot recover back his payment, although later an illegality is found in the assessment, because he has made no objection. What objection in reality has the taxpayer made when he files a paper in form a protest with no real objection behind it except possibly a general dislike for the payment of taxes? Such a so-called protest is not an objection, it is rather a venture and per-

haps the expression of a hope.    It is easily said that "All
the facts connected with the assessment are certainly as
fully known to the assessors as to the taxpayer, and they are
in as good a position as he to know whether the tax is legal
or illegal." (*Rumford Chemical Works* v. *Ray*, 19 R. I.
456).    But if the objection to an assessment which a tax-
payer raises is a valid one he has found a defect of which the
assessors were unaware, for it is not to be supposed that
they have intentionally made an invalid assessment.

In fact our tax laws are complicated.    This is shown by
the many cases in our reports arising under these laws.    The
court has at times with much difficulty construed some of our
statutory provisions regarding the assessment and collection
of taxes.    The decisions of the court in tax cases have not
at all times been in harmony upon disputed points.    In
*Matteson* v. *Warwick & Coventry Water Co.*, 28 R. I. at p.
578, the court has adopted the statement that "the legis-
lature has thrown uncertainty and confusion into the system
of taxation throughout the state."    In these circumstances
it is not unreasonable to assume that in the future, as in the
past, assessors will frequently make errors in their assess-
ments.    It is not unjust or burdensome to the taxpayer,
if he is to recover back his payment, that he shall state his
objection, in order that the community may have an oppor-
tunity of correcting its error in future assessments; and that
the city or town may not continue to pay over to the state
a portion of the tax collected, expend the balance in its
municipal expenses and in the end return with interest all
the taxes collected from those, who perhaps had no real
objection, but have filed these uninforming protests.

That the taxpayer shall set out in his protest the grounds
of his objection is not without authority in this state.    We
have two reported cases which reach an entirely different
conclusion upon this subject.    In *Dunnell Mfg. Co.* v.
*Newell*, 15 R. I. 233, the court says: "It is therefore no
more than fair that a taxpayer, if he intends to take advan-
tage of a defect, should at least object to or protest against

the tax when he pays it, so that the assessors may have notice and correct the defect for the future." The reasonable interpretation of this language is, that the court was of the opinion that the protest should be such as to give notice to the assessors of the alleged invalidity for their assistance in the future. In *Rumford Chemical Works* v. *Ray,* 19 R. I. 456, the court said, "The defendant also makes the point that the protest is not sufficient because it does not specify the alleged illegality. . . . We see no reason for requiring a specification in the protest of the alleged illegality." Of these two diverse authorities I prefer to follow the former which appears the better supported by reason and authority; and which amply protects both the taxpayer and the community.

This was the view adopted by the learned justice of the Superior Court and his ruling should be supported.

I am of the opinion that the exceptions should be overruled and the case remitted to the Superior Court with direction to enter judgment upon the verdict.

*Bassett & Raymond,* for plaintiff.

*R. W. Richmond,* of counsel.

*Elmer S. Chace, Albert A. Baker,* for defendant.