ALMON C. ALBRO *vs.* SAMUEL KETTELLE, Town Treasurer.

JULY 1, 1919.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

(1) *Taxes. Payment under Protest.*

The payment of an overdue tax under protest is not such a voluntary payment as would preclude a taxpayer from recovering it back upon showing its illegality, although no levy or threat to levy had been made or any suit instituted or threatened for its collection.

(2) *Taxes. Payment to Collector.*

Payment of a tax to the collector constitutes payment to the town and an action to recover a tax paid under protest on account of illegality may be maintained against the town treasurer without affirmative proof that the money was paid over by the collector to the town treasurer.

(3) *Taxes. Payment under Protest.*

A protest to the payment of taxes in order to be effective should point out with reasonable certainty the defect or error upon which such protest is based. *Rumford Chemical Works* v. *Ray,* 19 R. I. 456, and *Whitford, Bartlett & Co.* v. *Clarke,* 33 R. I. 331, in so far as they hold that a protesting taxpayer is not required to state the grounds of his protest, overruled.

ACTION TO RECOVER taxes paid under protest. Heard on exceptions of defendant and sustained.

VINCENT, J. This is an action brought by the plaintiff against the defendant, as town treasurer of the town of West Greenwich, to recover the amount of certain taxes paid to said town for the years 1908, 1910 and 1912, which said payments are alleged to have been made under protest.

The case was tried in the Superior Court for the county of Kent. The defendant introduced no evidence. At the conclusion of the testimony for the plaintiff each party moved the court to direct a verdict in his favor. The court granted the motion of the plaintiff and in accordance with such direction the jury returned a verdict for $623.02.

The case is now before us upon exceptions to various rulings of the trial court, admitting and excluding evidence, and also to the direction of a verdict for the plaintiff.

The plaintiff, a resident and taxpayer in the town of West Greenwich for many years, paid his tax for each of the years 1908, 1910 and 1912 upon the demand of the duly appointed collector. In each instance, however, he received from the collector a receipt upon which appears the words "paid under protest." It is not disputed that, in each case, the receipt is in the handwriting of the collector. These receipts are dated respectively January 25, 1909, December 30, 1910 and March 26, 1913.

The defendant in his brief presents two questions for our consideration : (1) "Were the several payments made by the plaintiff, under the circumstances as related by him, involuntary payments?" and (2) "Assuming that the plaintiff is entitled to recover, is he entitled to recover against the town treasurer, upon the record in this case, there being no evidence that the money was ever paid over to the defendant?"

The defendant claims, upon his first point, that, inasmuch as there had been no levy or threat to levy on the plaintiff's property and no suit had been instituted or threatened against him for the collection of these taxes, the payment thereof was voluntary notwithstanding the fact that he claimed to have made such payments under protest as evidenced by the receipts given, and that having been made voluntarily they cannot be recovered.

That the several collectors were acting under proper warrants authorizing them to collect taxes and to levy upon and sell the property of delinquent taxpayers is not disputed.

From the dates upon the receipts given to the plaintiff it appears that the taxes must have been overdue at the time of payment. The plaintiff would be supposed to know that his continued refusal to pay his taxes would lead to a levy upon his property or the commencement of a suit against him and that, in either event, he would be obliged to pay an additional amount by way of costs and interest, in case he was unsuccessful, together with other expenses which are usually incurred in litigated matters. To say that a taxpayer must assume such an added responsibility in order to place himself in a position where he could recover the amount of a tax illegally assessed would not be reasonable.

In *Dunnell Mfg. Co.* v. *Newell,* 15 R. I. 233, 238, this court said that the payment of a tax could not be considered as compulsory from the mere fact that the collector had a warrant authorizing him to collect it and that to so hold would practically make all payments compulsory as the collector would have no authority to collect without a warrant. The court further held, however, that the tax, for the one year, which had been paid under protest could be recovered back.

(1) In *Rumford Chemical Works* v. *Ray,* 19 R. I. 456, this rule was adhered to and the conclusion arrived at in *Dunnell Mfg. Co.* v. *Newell, supra,* regarding voluntary and involuntary payments was affirmed. It seems to be well established as the law of this State that a tax paid under protest is not such a voluntary payment as would preclude the taxpayer from recovering it back upon showing its illegality.

The defendant argues that there is nothing in the record to show that the monies paid to the several collectors for taxes for the years in question were ever paid over to the town treasurer of the town of West Greenwich and that so far as appears they are still in the hands of the collectors and, therefore, the trial court should have directed a verdict for the defendant and in support of that proposition cites *Lindsey* v. *Allen,* 19 R. I. 721 (1897). In that case the col-

lector of taxes levied upon the taxpayer's estate for collection of the tax and the tax was paid without protest. The (2) taxpayer brought suit against the collector, joining the town as a party defendant. It appeared affirmatively that the money was still in the hands of the collector and the court held that as the money had not come into the possession of the town the town treasurer was not a proper party to the suit and that it must be dismissed as to him. The court in that case seems to have reached this conclusion without any consideration of the question as to whether the possession of the collector would or not be the possession of the town, the one being the authorized agent of the other. However, the case of *Lindsey* v. *Allen, supra,* does not appear to have been followed, at least so far as this particular point is concerned, in some of the later cases decided by this court. Three years later in *Fish* v. *Higbee,* 22 R. I. 223 (1900) this court said, "A collector is the agent of the town or city in collecting a tax, and the town is really the only party interested in defending it. The money paid belongs to the town and not to the collector." Following this the court proceeds to set forth the reasons for its conclusions which we need not here repeat.

In *Pendleton* v. *Briggs,* 37 R. I. 352, this court said, "The taxpayers are called upon to pay their taxes to the town treasurer who proceeds to collect them under the duly executed warrant of the town, and whether or not such collector has given a sufficient bond to the town is not important to the taxpayer as it is at once apparent that the town could not, under such conditions, be permitted to collect the tax again." This is equivalent to saying that the payment of the tax to the collector constitutes a payment to the town and therefore discharges the obligation of the taxpayer and that he is not responsible for the disposition of the money after it reaches the hands of the collector.

The defendant contends that the several payments of the plaintiff, now sought to be recovered, were not accompanied by any written protest within the decision of this court in

*Rumford Chemical Works* v. *Ray, supra,* and that the protest claimed to have been made by the plaintiff was nothing more than an oral protest, the placing of the words, "paid under protest" upon the receipts by the collector being merely an acknowledgment that an oral protest had been made.

(3)    The purpose of requiring the taxpayer to make his protest in writing is to place on record some irrefutable evidence that such a protest was actually made at the time the tax was paid and not leave it to rest upon the sole assertion of some one who might find it for his interest to seek its establishment at some later period when those who might disprove it were no longer available. We think that the receipts bearing the words, "paid under protest" placed there by the collector and by him given to the taxpayer were to all intents and purposes protests in writing but whether or not they were in terms sufficient protests remains to be considered.

The defendant in his brief has not directly discussed the adequacy of the protest but that question was argued by counsel and therefore may be considered.

As we have already seen, the plaintiff in addition to the payment of these taxes under protest said to the collector that he did not think he had been legally assessed but he failed to point out or even intimate in what respect the assessment was illegal and so far as appears he had, at the several times when he protested, no knowledge of any specific defect or illegality.

In the case of *Cole* v. *The Warwick & Coventry Water Co.,* 35 R. I. 511, decided July 13, 1913, it was held that the vote ordering the tax in the town of West Greenwich for the year 1910 was invalid for the reason that the meeting authorizing the assessment of the tax was not legally called. While the validity of the tax for 1910 was the only question before the court in that case, the decision therein was equally applicable to the years 1908 and 1912, the meeting in each of those years having been called in the same manner as in 1910.

The plaintiff brought his suit to recover back the taxes for the years 1908, 1910 and 1912 on January 25, 1917, some three years and six months subsequent to the decision of this court in *Cole* v. *The Warwick & Coventry Water Co., supra.*

Inasmuch as it does not appear that the plaintiff in making his protests had in mind any specific defect or defects in the proceedings bearing upon the assessment of these taxes and did not bring his suit until after the illegal action of the town had been revealed through the opinion of this court in another case, it may be reasonably inferred that such protests were made with a view to taking advantage of and utilizing any irregularity which might be discovered at some later period.

The authorization, assessment and collection of a tax upon the ratable property of a town or city under our present laws is attended with much detail and offers many chances for the commission of error. Every person having taxable property should bear his proportionate share of the expenses of the municipality in which he resides or in which his possessions are located and it is reasonable that whenever he has been unlawfully assessed, and desires to take advantage of the error, he should apprise the proper authorities of the basis of his claim to the end that the error may be corrected, if possible, or subsequently avoided. This would not throw any burden upon the taxpayer because, as the court said in *Louden* v. *East Saginaw*, 41 Mich. 23, "He could not know it was illegal without knowing in what the defect was." The necessity for such action on the part of the taxpayer is well illustrated in the present case where the error was repeated in several successive years.

Because there is no statute specifically requiring a protesting taxpayer to state the foundation of his protest, he is not relieved from pursuing a method which would be just and reasonable if he would seek to avoid the payment of his tax. To claim that the tax is illegal without any specification whatever would be unfair and unjust in that it might deprive

the town of all opportunity to correct its error and perhaps leave open the door for its repetition. This court said in *Dunnell Mfg. Co. v. Newell, supra,* "It is . . . no more than fair that a tax-payer, if he intends to take advantage of a defect, should at least object or protest against the tax when he pays it, so that the assessors may have notice and correct the defect for the future." That case, however, did not involve any question as to the sufficiency of a protest as the court says, "In the case at bar the taxes . . . were paid without objection and without protest." The language of the court above quoted only goes to the extent of saying that in order to recover back taxes, paid under an invalid assessment, the taxpayer must have made a protest without defining what the form of such protest should be. That case, therefore, is not helpful in determining the particular question now under consideration.

We are thus brought face to face with the case of *Rumford Chemical Works* v. *Ray, supra,* in which this court said, "We see no reason for requiring a specification, in the protest of the alleged illegality" and also the case of *Whitford, Bartlett & Co.* v. *Clarke,* 33 R. I. 331, where this court following the case of *Rumford Chemical Works* v. *Ray, supra,* held that a protest without any specification of alleged illegality was sufficient.

The case of *Rogers* v. *The Inhabitants of Greenbush,* 58 Me. 390, which has been cited in connection with the case of *Whitford, Bartlett & Co.* v. *Clarke, supra,* is not an authority upon the question we are now discussing. To be sure, the court in that case said, "We think that the law requires something more definite and distinct than general fault finding, grumbling, complaint of injustice or inequality, even if in language it takes the form of protestation. It must be a distinct and definite protest against paying the particular tax, on the ground of its illegality. The form may not be material." This, however, is a mere dictum as the court immediately added, "In the present case, as the parties desire a decision on the main question, we waive a decision on this question."

Unless a protest contains something directing attention to the alleged defect it would be likely to prove useless through its failure to give to the assessors, or other town authorities, that information which would lead them to discover their error and enable them to correct it or avoid its repetition.

If one taxpayer can, by a protest in general terms, place himself in a position where he can recover back the tax he has paid, upon the later discovery of some defect within the period of the statute of limitations, many others or even all of the taxpayers might do the same and thus force the town into a most embarrassing situation. Suppose, for instance, that a large number of the taxpayers in the town of West Greenwich had paid their taxes for the years 1908, 1910 and 1912 under a protest in general terms, as did the plaintiff in the case at bar, what would have been the result if the rule in the two cases above referred to should be followed? The town would be liable for the repayment of the money which doubtless it had already expended in meeting its current expenses and might be placed, temporarily at least, in a bankrupt condition.

We do not think that a situation affording such opportunities should be permitted to continue but that any protest relating to the payment of taxes, in order to be effective, should point out with reasonable certainty the defect or error upon which such protest is based.

This conclusion is not unsupported by authority. In *Louden* v. *East Saginaw, supra,* the court said, "It would be a harsh and violent presumption to assume that under any general protest, specifying nothing, the council could find what particular slip or fault could be found in an assessment which was regularly and lawfully ordered, and only fell through by what was a clerical blunder, although one which cannot be called merely formal. . . . The council cannot be in fault for not knowing what a party means to complain of when he does not see fit to tell them."

In *Meek* v. *McClure*, 49 Cal. 623, the court said, "Wherever a protest is essential, it is, therefore, necessary to state the grounds upon which the party paying the money claims that the demand is illegal." With the establishment of such a rule it logically follows that in any action taken by the taxpayer he must be confined to the defect or defects alleged by him in the protest which he makes at the time of payment.

The cases, *Rumford Chemical Works* v. *Ray* and *Whitford, Bartlett & Co.* v. *Clarke,* both *supra,* are, in so far as they hold that a protesting taxpayer is not required to state the grounds of his protest, overruled.

The plaintiff may appear before this court on Monday July 7, 1919, at ten o'clock in the forenoon, if he shall see fit, and show cause, if any he has, why this case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*Greenough, Easton & Cross,* for plaintiff.
*Quinn & Kernan,* for defendant.