## MARIANI *v.* CITY OF DEARBORN.

1. WORDS AND PHRASES—ASSESSMENT.
    The term *assessment* carries with it the idea of a burden imposed *in invitum*, and a single act, as distinguished from recurring acts, indicating the charge so made or imposed or the amount thereof, and includes all the steps necessary to carry the assessment into effect.

2. PAYMENT—NATURE OF ACT.
    Payment implies a voluntary act of the debtor looking to the satisfaction, in whole or in part, of the demand against him.

3. SAME—CONSENT.
    A creditor cannot lawfully pay himself with the debtor's money, without the debtor's consent, either express or implied; and

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur, Special Assessments § 3.
    51 Am Jur, Taxation § 647.
[2] 40 Am Jur, Payment §§ 2, 3, 109.
[3] 40 Am Jur, Payment §§ 4, 128.
[4-6] 40 Am Jur, Payment §§ 180, 181.
    51 Am Jur, Taxation §§ 943, 1189.

when the debtor delivers him money for a purpose which negatives the idea of payment, the creditor's control is limited to the purpose declared.

4. SAME—PROTEST.
Paying a tax under protest is an assertion of illegality, the principal object of the protest being to warn the controlling officer not to pay over the money.

5. MUNICIPAL CORPORATIONS—PAYMENT OF BILL UNDER PROTEST—LIMITATION OF ACTIONS.
Plaintiff was not precluded from recovery of sum paid defendant city under protest upon receipt of *bill* for sidewalk construction, where although city charter allowed 30 days within which to commence action for recovery of an *assessment* paid under protest, plaintiff waited more than 30 days after his payment but had commenced his action before an assessment for the construction could be made under pertinent statutory, charter, and ordinance provisions (CL 1948, § 211.53; Dearborn City Charter, §§ 16.10, 16.13, 16.14, 16.24; Dearborn Ordinance No 50–521, as amended by Ordinance No 58–1244).

6. PAYMENT — PROTEST — BILL — ASSESSMENT — LIMITATION OF ACTIONS.
The provisional payment under protest of a *bill* from a tax collecting officer of a city does not start the running of a period of limitations imposed for commencement of action to recover protested payment of an *assessment*.

Appeal from Wayne; Canham (James N.), J. Submitted Division 1 April 6, 1965, at Detroit. (Docket No. 155.) Decided June 21, 1965.

Complaint by Salvatori Mariani against City of Dearborn, a municipal corporation, to recover payment, made under protest, for alleged sidewalk constructed adjacent to his property. Accelerated judgment for defendant. Plaintiff appeals. Reversed.

*James Thomson,* for plaintiff.

*Ralph B. Guy, Jr.,* Corporation Counsel, and *Carl P. Garlow,* Assistant Corporation Counsel, for defendant.

Holbrook, J. This matter comes before this Court upon an appeal from an order granting defendant and appellee's motion for accelerated judgment.[1] Plaintiff is the owner of real estate adjacent to 2000 S. Telegraph road in the defendant city.

The council of the defendant city in accord with Ordinance No 50–521, passed a resolution April 16, 1963, concerning proposed sidewalk and driveway apron construction and repair program, Contract #1–1963, determining necessity to construct certain sidewalks in the city of Dearborn including a sidewalk in front of the property of plaintiff.

Ordinance No 50–521, § 6, as amended by Ordinance No 58–1244, provides in part as follows:

"Charge for construction; special assessment. Upon the completion of the building, rebuilding, replacing, or repairing of any sidewalk or apron for side drive by the city in accordance with the provisions of this ordinance, a bill for the cost thereof, together with the additional 10 per cent, as above specified, shall be mailed by the director of public works to the owner of the property improved, if his address be known or can with reasonable diligence be ascertained, demanding payment of the amount due. If said amount is not paid to the city within 30 days from the date of such bill, the amount due shall be assessed against such property as a special assessment, in accordance with the provisions of section 16.24 of chapter 16 of the charter of the city of Dearborn."

Chapter 16, § 16.24, of the charter of the city of Dearborn, provides as follows:

"At the second regular meeting of the council in January of each year, the controller shall present to the council a certified list of all amounts due and unpaid to the city for the installation of sidewalks,

---

[1] See GCR 1963, 116.1.—Reporter.

\* \* \* or any similar work or improvement made on and affecting private property, by the city during the preceding year, \* \* \* chargeable to the owners and occupants of the property upon which said improvements are made and to the property itself. \* \* \*

"The council shall thereupon pass a resolution determining to levy a special assessment upon each said parcel of land for the amount due the city as set forth in said list and shall create a special assessment district \* \* \* said district to be designated as 'consolidated miscellaneous assessment district for the year 19. . . .,' such year being the year in which said improvements were made, and shall order the board of assessors to make an assessment roll to be known as the 'consolidated miscellaneous assessment roll for the year 19 . . . .' and to assess to each parcel of land designated in said miscellaneous assessment district \* \* \* as shown by the controller's certified list, upon which improvements, constituting a lien upon the property itself, have been made. \* \* \*

"All other provisions of this chapter relating to preparation and filing of roll, hearing by board of review, confirmation of roll, enforcement and collection of assessment, all notices in connection therewith, new assessments and reassessments and all other procedure in this chapter contained and applicable thereto, shall apply to assessments in this section authorized."

The other provisions of the charter of the city of Dearborn dealing with special assessments and time within which to test the validity thereof are contained in chapter 16 of the charter of said city, same being sections 16.10, 16.13, and 16.14, which are hereinafter quoted:

"§ 16.10. After the approval of the assessment roll as hereinabove provided, the council shall thereupon or thereafter pass a resolution confirming such roll

and in the same resolution shall find and determine that such roll contains a description of all the parcels of land constituting the assessment district; * * * and that all of the provisions of the charter of the city of Dearborn and of law authorizing all or part of the cost of a public improvement to be assessed to a special district have been complied with in the preparation of the assessment roll therein confirmed. Such roll shall have the date of confirmation indorsed thereon and be filed in the office of the city clerk."

"§ 16.13. All special assessments shall, *from the date of the confirmation thereof,* constitute a lien upon the respective parcels of land assessed and shall be a charge against the person to whom assessed until paid.

"§ 16.14. Such special assessments and all proceedings upon which such special assessments are based shall be incontestable, *unless suit to test the validity thereof is instituted within 30 days after the day of the confirmation of such special assessment roll."* (Emphasis supplied.)

The defendant city claims it constructed a sidewalk adjacent to plaintiff's property at 2000 S. Telegraph road on June 2 and 3, 1963, and in accord with Ordinance No 50–521 alleging that a bill was sent from defendant city to the plaintiff showing due $434.72 for sidewalk construction, same payable within 30 days from June 26, 1963. Plaintiff paid the amount billed him on July 24, 1963, but paid the same *under protest.*

On November 18, 1963, plaintiff instituted an action in Wayne county circuit court to recover the said sum of $434.72 with interest plus court costs and attorney fees claiming that the city had obtained the same without legal authority. On December 3, 1963, defendant made a motion for accelerated judgment claiming that plaintiff had failed to state a

cause of action and further that the charter of the city of Dearborn, and the statute of the State of Michigan, set up an appeal time during which a special assessment may be sued for and that plaintiff had failed to comply with the statutory provision and the charter requirements; and further, that the city did construct a sidewalk. The plaintiff amended his complaint substituting the word "billed" for "assessed" in paragraphs 2 and 3. Briefs were filed by both parties. On May 1, 1964, the Honorable James N. Canham, circuit judge, filed his opinion wherein he stated:

"The only issue presented for the court's determination is whether or not the plaintiff filed this suit timely pursuant to the provisions of the city of Dearborn charter, § 16.14, and CL 1948, § 211.53 (Stat Ann 1960 Rev § 7.97).

"In the event the court determines that the said suit was not started timely the matter is concluded and the city shall prevail. * * *

"It is plaintiff's further contention that the charter and statute have no application since there was never any assessment to protest, merely a bill for cost of sidewalk construction. Plaintiff cites Dearborn Ordinance No 50–521, § 6, entitled charge for construction. * * *

"The court concludes a special assessment was made by the defendant city, and the plaintiff had 30 days under the charter and the statute to challenge it after he paid same under protest. The plaintiff did not so challenge within 30 days provided therefor.

"Defendant's motion for accelerated judgment is granted."

The defendant city of Dearborn asserts that the ruling in *Haggerty* v. *City of Dearborn* (1952), 332 Mich 304, is controlling in the case at bar.

In the *Haggerty* v. *City of Dearborn Case, supra,* there was a suit by John S. Haggerty against the city of Dearborn and others *to cancel special assessment* and remove cloud from title. The case involved *a special assessment* imposed for the purpose of defraying the cost of construction of a sewer. The city, pursuant to law, included the property of plaintiff in the assessment district and *the assessment roll was confirmed and sewer completed* before the cause was commenced. The Court held on p 319 in part as follows:

"We hold that under CL 1948, § 211.53,[2] a party dissatisfied with his assessment for taxes, either for real or personal property or *special assessment* on real property must pay under protest, specifying in writing the grounds of such protest. The statute also provides that after paying under protest the party must begin his action within 30 days after such payment. Plaintiff's failure to comply with statutory provisions precludes relief in the instant case. He had an adequate remedy at law, but failed to exercise his right thereto." (Emphasis supplied.)

Our attention is also called to the case of *Berston* v. *City of Flint* (1913), 176 Mich 266. In this case, complainant sought to enjoin the defendant city from confirming an assessment roll, and from entering into a contract for the construction of a certain sewer. It was claimed that certain property benefited by the sewer, was not included in the assessment district and should have been and for further reasons requested relief. The Supreme Court af-

---

[2] CL 1948, § 211.53 (Stat Ann 1960 Rev § 7.97) provides in part:
"He may pay any tax, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover, if the tax shown to be illegal for the reason shown in such protest."

firmed the trial court granting relief to the complainants.

Further light is thrown upon the two cases when we read from the *Haggerty* v. *City of Dearborn Case, supra,* from p 318, which states in part as follows:

"In the *Berston Case* there was an excessive payment for the right-of-way and failure to include in the assessment district certain property of General Motors that would benefit from the sewer. Moreover, suit was started prior to the confirmation of the assessment roll. In the case at bar, the property of plaintiff was included in the assessment district and *suit was not started until after the assessment roll was confirmed and the sewer completed.* In our opinion the above case is not authority for cancellation of the assessment on plaintiff's property." (Emphasis supplied.)

In 6 CJS, Assessment, p 1024, it is stated in part as follows:

"It has been said that the term carries with it the idea of a burden imposed *in invitum,* and a single act as distinguished from recurring acts, indicates the charge so made or imposed or the amount thereof, and includes all the steps necessary to carry the assessment into effect."

Also see 5 CJ, Assessment, § 2, p 816, and note thereunder; *Urquhart* v. *Wescott,* 65 Wis 135, 143 (26 NW 552); *Prentice* v. *Ashland County,* 56 Wis 345, 347 (14 NW 297); and 5 CJ, Assessment, § 3, p 819.

In the case at bar, the plaintiff paid a bill to the city of Dearborn in accordance with a resolution, but paid it under protest and before any assessment roll was made in accordance with the city charter, chapter 16, § 16.24, as above recited. In fact, the suit was started at least two months before the city could place in operation, the resolution

to create a consolidated miscellaneous assessment roll under the provisions of said chapter 16, § 16.24.

Can defendant city consider the payment by the plaintiff in this case as payment of the debt not requiring the subsequent proceedings of making a legal assessment? In *Detroit, H. & S. R. Co.* v. *Smith* (1883), 50 Mich 112, p 113, Justice COOLEY states:

"Payment implies a *voluntary act of the debtor looking to the satisfaction, in whole or in part, of the demand against him;* but in this case there was no such act whatever. What was done by defendant was directly in the face of the plaintiff's orders, who did not contemplate or desire any such payment. A creditor cannot lawfully pay himself with the debtor's money, without the debtor's consent, either express or implied; and when the debtor delivers him money for a purpose which negatives the idea of payment, the creditor's control is limited to the purpose declared." (Emphasis supplied.)

Paying a tax under protest is an assertion of illegality. *Louden* v. *East Saginaw* (1879), 41 Mich 18. The principal object of the protest seems to be to warn the controlling officer not to pay over the money. *First National Bank of Sturgis* v. *Watkins* (1870), 21 Mich 483, 490.

This Court must rule that the payment of the bill as sent to plaintiff by the director of public works was made under protest and that he preserved his legal rights thereunder and if the city had desired to perfect a lawful assessment, the same should have been proceeded with in accordance with law as provided in the charter and the ordinance of the said defendant city. Said bill not being an assessment, the payment of the same under protest did not preclude him nor did section 16.14 of the charter apply to such provisional payment.

It is the finding of this Court that the trial court erred in dismissing the action for the failure of

plaintiff to sue for the recovery of the sum paid within 30 days from payment under protest. Reversed. Costs to plaintiff-appellant.

T. G. KAVANAGH, P. J., and McGREGOR, J., concurred.